UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
VICINAGE OF CAMDEN


Luis-Burgos Cintron, a/k/a      :
Luis Burgos                          Hon. Joseph H. Rodriguez,
                                :    S.U.S.D.J.

        Plaintiff,              :
                                     Civil Action No. 09-4470
     v.                         :

August Nyekan, Jr., et als      :

        Defendants.             :

---

BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT PURSUANT TO <u>FED.R.CIV.P</u>. 56

---

PAULA A. DOW
ATTORNEY GENERAL OF NEW JERSEY
Attorney for Defendants
R.J. Hughes Justice Complex
PO BOX 112
Trenton, New Jersey 08625
(609) 292-8582


Vincent J. Rizzo, Jr.
Deputy Attorney General
    On the Brief

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT.. . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY.. . . . . . . . . . . 3

LEGAL ARGUMENT

STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . 7

> POINT I

> > PLAINTIFF'S FEDERAL CLAIMS AGAINST THE TROOPER
> > DEFENDANTS IN THEIR OFFICIAL AND/OR SUPERVISORY
> > CAPACITIES SHOULD BE DISMISSED BECAUSE THEY ARE
> > BARRED BY THE ELEVENTH AMENDMENT AND NOT SUBJECT TO
> > LIABILITY UNDER 42 U.S.C. §1983.. . . . . . . . . . . . 8

> > A.   Plaintiffs' Claims Against the Trooper
> >      Defendants are Barred by the Eleventh
> >      Amendment and Must Be Dismissed. . . . . . . . . . 8

> > B.   Plaintiffs' Claims Against the Trooper
> >      Defendants Should Be Dismissed Because the
> >      Troopers are not a "Person" Subject to
> >      Liability Under 42 U.S.C. §1983. . . . . . . . . . 12

> > C.   Plaintiff's 42 U.S.C. §1983 Claim Against
> >      Defendant South Should be Dismissed Because 42
> >      U.S.C. §1983 Precludes Recovery Based Upon a
> >      Theory of Respondeat Superior. . . . . . . . . . . 14

> POINT II

> > THE DEFENDANT TROOPERS SHOULD BE GRANTED JUDGMENT
> > AS TO PLAINTIFF'S FEDERAL AND STATE CLAIMS OF
> > MALICIOUS PROSECUTION FALSE ARREST AND FALSE
> > IMPRISONMENT AS PLAINTIFF CANNOT SATISFY THE
> > REQUISITE ELEMENTS NECESSARY TO SUSTAIN SUCH CLAIMS
> > . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

POINT III

      THE DEFENDANT TROOPERS ARE ENTITLED TO QUALIFIED
      IMMUNITY ON THE PLAINTIFF'S FEDERAL AND STATE
      CLAIMS OF MALICIOUS PROSECUTION, FALSE ARREST, AND
      FALSE IMPRISONMENT. . . . . . . . . . . . . . . . . . 24

      A.    Troopers Nyekan and Bumbera had Probable
           Cause, or a Reasonable Belief in the Existence
           of Probable Cause, to Issue a Complaint and
           Warrant for the Arrest of Plaintiff. . . . . . . . 24

      B.    The Trooper Defendants are Entitled to the
           Good Faith Immunity Provided Under N.J.S.A.
           59:3-3 for Their Actions in Investigating,
           Identifying, and Filing the Complaint and
           Warrant for Plaintiff's Arrest as New Jersey
           has Adopted the Federal Test of Objective
           Reasonableness.. . . . . . . . . . . . . . . . . . . 28

POINT IV

      PLAINTIFF IS NOT ENTITLED TO THE RELIEF SOUGHT IN
      COUNT III OF HIS COMPLAINT BECAUSE IT FAILS TO
      ADEQUATELY PLEAD A CONSTITUTIONAL VIOLATION UNDER
      42 U.S.C. §1983 CONCERNING THE MANNER OF THE PHOTO
      IDENTIFICATION EMPLOYED BY DEFENDANTS.. . . . . . . . . 29

POINT V

      ALL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY
      FOR THEIR ACTIONS IN ANY WAY RELATED TO THE
      INVESTIGATION ARREST OR PROSECUTION OF THE
      PLAINTIFF.. . . . . . . . . . . . . . . . . . . . . . . 33

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . 37

## TABLE OF AUTHORITIES

### CASES

Acierno v. Cloutier, 40 F.3d 597 (3d Cir. 1994)(en banc). . . . . . 36

Adickes v. S.J. Kress & Co., 398 U.S. 144 (1970). . . . . . . . . . 7

Alabama v. Pugh, 438 U.S. 781 (1978). . . . . . . . . . . . . . . . 11

Alden v. Maine, 527 U.S. 706 (1999). . . . . . . . . . . . . . . . . 9

Anderson v. Creighton, 483 U.S. 635 (1987). . . . . . . . . 25, 34-36

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). . . . . . . . 8

Andujar v. Rodriguez, 480 F.3d 1248, n.4 (11th Cir. 2007). . . . . . 31

Baker v. McCollan, 443 U.S. 137 (1979). . . . . . . . . . . . . 29, 36

Barletta v. Golden Nugget Hotel Casino, 580 F. Supp. 614
     (D.N.J. 1984). . . . . . . . . . . . . . . . . . . . . . . . . 19

Bauer v. Borough of Cliffside Park, 225 N.J. Super. 38. . . . . . . 19

Beck v. Ohio, 379 U.S. 89 (1964). . . . . . . . . . . . . . . . 20, 26

Beers v. Arkansas, 20 How. 527 (1858). . . . . . . . . . . . . . . . 14

Bennett v. City of Atlantic City, 288 F. Supp. 2d 675
     (D.N.J. 2003). . . . . . . . . . . . . . . . . . . . . . . . 10-12

Bixler v. Central Pa. Teamsters Health & Welfare Fund,
     12 F.3d 1292 (3d Cir. 1993). . . . . . . . . . . . . . . . . . . 7

Blatchford v. Native Village of Noatak and Circle Village,
     501 U.S. 775 (1991). . . . . . . . . . . . . . . . . . . . . . . 11

Brinegar v. United States, 338 U.S. 160 (1949). . . . . . . . . . . 20

Brittingham v. City of Camden, No. 07-190 (JBS), 2007
     U.S. Dist. LEXIS 49296, at *8 (D.N.J. July 9, 2007). . . . . . . 13

Celotex Corp. v. Catrett, 477 U.S. 317 (1986). . . . . . . . . . . . 7

Codd v. Brown, 949 F.2d 879 (6th Cir. 1991). . . . . . . . . . . . . 30

Colburn v. Upper Darby Township, 838 F.2d 663
     (3d Cir. 1988), cert. denied, 489 U.S. 1065 (1989). . . . . . . 16

College Sav. Bank v. Florida Prepaid Postsecondary
   Educ. Expense Bd., 527 U.S. 666 (1999). . . . . . . . . . . . . . 11

Connor v. Powell, 162 N.J. 397 (2000). . . . . . . . . . . . . . . 22

Czurlanis v. Albanese, 721 F.2d 98, 108 n.8 (3d Cir. 1983). . . . . 34

Delbridge v. Franco, 513 U.S. 832 (1994). . . . . . . . . . . . . . 15

Delbridge v. Schaeffer, 569 A.2d 872 (Law Div. 1994)
   cert. denied. . . . . . . . . . . . . . . . . . . . . . . . . . 15

Dowling v. City of Philadelphia, 872 F.2d 136
   (3d Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . 20

Dugan v. Rank, 372 U.S. 609 (1963). . . . . . . . . . . . . . . . . 10

Easton v. City of Boulder, 776 F.2d 1441 (10th Cir. 1985). . . . . . 22

Estate of Smith v. Marasco, 318 F.3d 497 (3d Cir. 2003). . . . . . . 18

Fed. Mar. Comm'n v. South Carolina State Ports Auth.,
   535 U.S. 743 (2002). . . . . . . . . . . . . . . . . . . . . . 9, 10

Fuchilla v. Prockop, 682 F.Supp. 247 (D.N.J. 1987). . . . . . . . . 34

Gerstein v. Pugh, 420 U.S. 103(1975). . . . . . . . . . . . . . 20, 26

Giri v Rutgers Cas. Ins. Co., 273 N.J. Super. 344
   (App. Div. 1994). . . . . . . . . . . . . . . . . . . . . . . . 18

Giuffre v. Bissell, 31 F.3d 1241 (3d Cir. 1994). . . . . . . . . . . 35

Great Northern Life Ins. v. Read, 322 U.S. 47 (1944). . . . . . . . 11

Green v. City of Paterson, 971 F.Supp. 891 (D.N.J. 1997). . . . . . 26

Gurski v. New Jersey State Police Dept., 242 N.J.Super.
   148 (App.Div. 1990). . . . . . . . . . . . . . . . . . . . . . . 28

Harlow v. Fitzgerald, 457 U.S. 800 (1982). . . . . . . . . . . . . . 33

Hayes v. County of Mercer, 217 N.J.Super. 614
   (App.Div. 1987). . . . . . . . . . . . . . . . . . . . . . . 26, 29

Hawaii v. Gordon, 373 U.S. 57 (1963) (per curiam). . . . . . . . . . 10

Hunter v. Bryant, 502 U.S. 224 (1991) (per curiam). . . . . . . . . 27

Illinois v. Gates, 462 U.S. 213 (1983). . . . . . . . . . . . . 23, 26

iv

J.E. Mayime & Sons, Inc. v. Fidelity Bank,
  813 F.2d 610 (3d Cir. 1987). . . . . . . . . . . . . . . 8

Johnson v. Knorr, 477 F.3d 75 (3d Cir. 2007). . . . . . . . . . . 19

Jones v. Chieffo, 883 F.Supp. 498 (E.D. Pa. 1993). . . . . . . . . 31

Jordan v. New Jersey Dep't of Corrections,
  881 F. Supp. 947 (D.N.J. 1995). . . . . . . . . . . . . . 10

Kelley v. Edison Twp., 377 F. Supp. 2d 478 (D.N.J. 2005). . . . . . 10

Lang v. New York Life Ins. Co., 721 F.2d 118 (3d Cir. 1983). . . . . 7

Lassoff v. New Jersey, 414 F. Supp. 2d 483 (D.N.J. 2006). . . . . . 10

Lightning Lube, Inc. V. Witco Corp., 4 F.3d 1153
  (3d Cir. 1993). . . . . . . . . . . . . . . . . . . . 24

Lind v. Schmid, 67 N.J. 255 (1975). . . . . . . . . . . . . . . 18

Luthe v. The City of Cape May, 49 F.Supp. 2d 380
  (D.N.J. 1999). . . . . . . . . . . . . . . . . . 25-27, 36

Malley v. Briggs, 475 U.S. 335 (1986). . . . . . . . . . . 28, 36

Manson v. Braithwaite, 432 U.S. 98, 97 S.Ct. 2243,
  53 L.Ed. 2d 140 (1977). . . . . . . . . . . . . . . . . 32

Martinez v. Simonetti, 202 F.3d 625 (2d Cir. 2000). . . . . . . . 21

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
  475 U.S. 574 (1986). . . . . . . . . . . . . . . . . . . 8

Mayflower Industries v. Thor Corp., 15 N.J. Super. 139
  (Ch. Div. 1951). . . . . . . . . . . . . . . . . . . . 18

Mitchell v. Forsyth, 472 U.S. 511 (1985). . . . . . . . . . . . 34

Monell v. Department of Social Services of City of
  New York, 436 U.S. 658 (1978). . . . . . . . . . . . . . 15

Morales v. Busbee, 972 F. Supp. 254 (D.N.J. 1997). . . . . . . . . 24

Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375,
  34 L.Ed. 2d 401 (1972). . . . . . . . . . . . . . . . . 32

Orsatti v. N.J. State Police, 71 F.3d 480 (3d Cir. 1995). . . . 20, 27

ennhurst State School Hosp. V. Halderman, 465 U.S. 89
   (1984) (citing Hawaii v. Gordon, 373 U.S. 57 (1963))
   (per curiam) . . . . . . . . . . . . . . . . . . . . 10-11

Penwag Property Co. Inc., v. Landau, 76 N.J. 595 (1978). . . . . . . 18

Potts v. Imlay, 4 N.J.L. 382 (Sup. Ct. 1816). . . . . . . . . . . 18

Procunier v. Navarette, 434 U.S. 555 (1978). . . . . . . . . . . 32

Quern v. Jordan, 440 U.S. 332 (1979). . . . . . . . . . . .11, 13

Railroad Co. v. Tennessee, 101 U.S. 337 (1880). . . . . . . . . . 14

Rode v. Dellarciprete, 845 F.2d 1195 (3d Cir. 1988). . . . . . . . 16

Rogers v. Powell, 120 F.3d 446 (3d Cir. 1997). . . . . . . . . . 27

Rudolph v. Adamar of New Jersey, 153 F. Supp. 2d 528
   (D.N.J. 2001). . . . . . . . . . . . . . . . . . . . 10

Ruffin v. Beal, 468 F. Supp. 482 (E.D. Pa 1978). . . . . . . . . . 15

Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151. . . . . . 27, 28, 34, 37

Schneider v. Simonini, 163 N.J. 336 (2000). . . . . . . . . . . . 26

Seigert v. Gilley, 500 U.S. 233 (1991). . . . . . . . . . . . . 35

Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996). . . . . . 10

Sharrar v. Felsing, 128 F.3d 810(3rd Cir. 1997). . . . . 21, 22, 27, 36

Simmons v United States, 390 U.S. 377 (1968). . . . . . . . . . . 32

Skehan v. Board of Trustees of Bloomsburg State College,
   590 F.2d 470 (3d Cir. 1978), cert. denied, 444 U.S. 832
   (1979). . . . . . . . . . . . . . . . . . . . . . . 12

State v. Davis, 50 N.J. 16 (1967), cert. denied,
   389 U.S. 1054 (1968). . . . . . . . . . . . . . . . . 20

State v. Farrow, 61 N.J. 434 (1972) cert. denied,
   410 U.S. 937 (1973). . . . . . . . . . . . . . . . 31, 33

State v. Herrara, 187 N.J. 493 (2006). . . . . . . . . . . . 32, 33

State v. Madison, 109 N.J. 223, 536 A.2d 254 (1988). . . . . . . . 32

State v. Matlack, 49 N.J. 491 (1987). . . . . . . . . . . . . . 31

Theodore Fleming v. United Parcel Service, Inc. et al.,
  255 N.J. Super. 108 (Law Div. 1992).. . . . . . . . . . . . . . . 18, 19

Thompson v. City of Chicago, 472 F.3d 444 (7 th Cir. 2006). . . . . 31

Tofano v. Reidel, 61 F.Supp. 2d 289 (D.N.J. 1999). . . . . . . . . 29

Trap Rock Indus. Inc. v. Local 825, Int'l Union of
  Operating Eng'rs, 982 F.2d 884 (3d Cir. 1992).. . . . . . . . . . 7

Trautvetter v. Quick, 916 F.2d 1140 (7th Cir. 1990).. . . . . . . . 29

U.S. v. Cruz, 910 F.2d 1072 (3d Cir. 1990). . . . . . . . . . . . . 20

United States v. Glasser, 750 F.2d 1197 (3d Cir. 1984),
  cert. denied, 471 U.S. 1018 (1985). . . . . . . . . . . . . . 23, 26

United States v. Laville, 480 F.3d 187 (3d Cir. 2007).. . . . . . . 31

West v. Atkins, 487 U.S. 42 (1988). . . . . . . . . . . . . . . 13, 29

Wildoner v. Ramsey, 162 N.J. 375 (N.J. 2000). . . . . . . . . . 26, 28

Will v. Michigan Dep't of State Police, 491 U.S. 58
  (1989). . . . . . . . . . . . . . . . . . . . . . . . . 9, 12-14

Wilson v. Layne, 526 U.S. at 615. . . . . . . . . . . . . . . . . . 34

## STATUTES

42 U.S.C. §1983.. . . . . . . . . . . . . . . . 1, 2, 8, 11-15, 29, 33

N.J.S.A. 59:3-3.. . . . . . . . . . . . . . . . . . . . . . . . . 28

N.J.S.A. 59:1-1.. . . . . . . . . . . . . . . . . . . . . . . . . 11

U.S. Const. amend. XI.. . . . . . . . . . . . . . . . . . . . . . 9

## RULES

Fed. R. Civ. P. 56. . . . . . . . . . . . . . . . . . . . . . . . 7

## OTHER AUTHORITIES

New Jersey Legislature of the Tort Claims Act.. . . . . . . . . . 11

## **PRELIMINARY STATEMENT**

Plaintiff, Luis Burgos-Cintron, a/k/a Luis Burgos, originally brought this action seeking damages and other relief against the defendants, Augustus Nyekan, Jr., James South, Mark Cunard, Richard Bumbera (all State Police officers), the New Jersey Division of State Police, the New Jersey Division of State Police, Strategic Investigation Unit and the State of New Jersey (although plaintiff did not identify him in the caption of the original complaint, he did identify Edward Fallon, a State Police Detective in Paragraph III of the complaint, entitled "PARTIES") (collectively "Defendants") (See Ex. A, Plaintiff's Complaint). Specifically, plaintiff alleged that the defendants, in both their individual and official capacities, violated his constitutional and civil rights under 42 U.S.C. §1983 by engaging in malicious prosecution, false arrest, failing to provide due process (in that they did not and/or improperly conducted a photo lineup/array in accordance with guidelines established by the Attorney General of New Jersey), false imprisonment, selective prosecution, conspiracy and developing and maintaining policies and practices exhibiting a deliberate indifference to plaintiff's civil rights (Monell claim) (See Ex. A, Counts I thru VII). Further, plaintiff alleged that these same defendants violated his New Jersey State Constitutional rights in Counts VIII thru X (mislabeled as a second COUNT VIII). However, even after accepting all the alleged facts as true and examining the claims in a light most favorable to the plaintiff, the Court should grant summary judgment to all the defendants on the basis that plaintiff either, or both, fails to state a cause of action or there are no controverting

facts sufficient to inhibit the entry of judgment on the applicable law.[1]

Plaintiff cannot sustain his §1983 claims against the defendants. Specifically, the New Jersey Division of State Police, the New Jersey Division of State Police, Strategic Investigation Unit, the State of New Jersey and the individual Troopers, in their official capacities, are not amenable to suit under the Eleventh Amendment.  Likewise, these defendants are not "persons" within the meaning of 42 U.S.C. §1983. Furthermore, defendants argue that even if certain guidelines regarding the procedure of conducting a photo lineup were not followed (which is not conceded for any purpose), this failure does not rise to the level of a constitutional violation and thus plaintiff cannot state a claim for such a violation.  Plaintiff also fails to satisfy all the elements of both a malicious prosecution claim as well as one for false arrest/imprisonment as to each of the defendants he identifies as engaging in such behavior, in particular showing a lack of probable cause, personal involvement in the specific activity  and/or malicious intent.  In the alternative, all individual defendants are entitled to qualified immunity for the arrest and prosecution of the plaintiff. Finally, certain of the claims made by plaintiff appear to be based on the supervisory level position of one or more of the defendants.  Since a constitutional violation requires the personal involvement of an

---

[1] It should be noted that in accordance with a  Stipulation of Dismissal signed by counsel for the plaintiff on December 23, 2010, all claims made against Mark Cunard and any allegations that could be construed as claims made against Edward Fallon are dismissed with prejudice and that Counts V (Selective Prosecution), VI (Monell) and VII (Conspiracy) are also dismissed with prejudice(See Ex. 1).

individual and cannot rest upon either the application of vicarious liability or a theory of *respondeat superior*, any such claim must necessarily fail.

Accordingly, all claims remaining in plaintiff's Complaint should be dismissed and all defendants should be granted judgment, with prejudice, as to those claims.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

On September 15, 2007, Kareem Parker and his friend, George Brown, Sr., became engaged in a verbal altercation with two other individuals, Joseph Thompson and Luis Santiago in Camden, New Jersey.  This eventually led to an attempt, on the part of Luis Santiago, to shoot Kareem Parker using a pistol.  The entire episode was observed by Mr. Brown as it unfolded.

Shortly after the shooting, the Camden Police reported to the scene of the incident and began an investigation.  During the course of this initial investigation both Kareem Parker and George Brown, Sr. identified Joseph Thompson and Luis Santiago as the individuals who were engaged in the altercation and specifically identified Luis Santiago as the individual who used the pistol to shoot at Kareem Parker.  Both gave the names and descriptions of Thompson and Parker and both indicated that they had known both individuals for some time, having gone to school with them.

Subsequently, the investigation of the alleged crimes was handed over to the New Jersey State Police, Strategic Investigation Unit, which investigated non-lethal shootings in the City of Camden.  The investigation was assigned to defendant Trooper August Nyekan, Jr. on

September 18, 2007.  He was both assisted and supervised by defendant, Detective Richard Bumbera, another member of the unit.  Together, they visited the scene of the incident, interviewed persons who were present at the time and viewed a video tape of the incident that had been taken by a camera belonging to the shoe store in front of which the incident occurred.

Thereafter, they went to the home of Kareem Parker to interview him about the matter.  Although Mr. Parker was willing to discuss the incident and did so, giving details of the crime and identifying the individuals involved, he refused to give a recorded or written statement, claiming fear of retaliation towards himself and/or members of his family.  However, while interviewing Mr. Parker, Trooper Nyekan recognized another individual who was present in the home as resembling an individual who appeared on the video tape he had viewed at the shoe store.  When questioned, this individual acknowledged that he was present at the time of the incident, had viewed the incident in its entirety and was willing to give a statement to the officers.  He identified himself as George Brown, Sr., a friend of Mr. Parker.  Mr. Brown corroborated Mr. Parker's statements about the incident and confirmed that Joseph Thompson and Luis Santiago were the individuals involved and that Luis Santiago was the shooter.  He gave a recorded statement which was later transcribed.  Both he and Mr. Parker were adamant in their identifications as both claimed they had known Thompson and Santiago for a long time and "knew them from school".  Both identified photos of Thompson and Santiago that had been obtained from an investigatory system known as "Picture Link", which is a computer

database of photos and identifying information of individuals who had previously been arrested in Camden (unknown to Nyekan and Bumbera at the time, was that the photo of Santiago identified by Parker and Brown as the individual who had done the shooting, was actually the photo of the plaintiff, Luis Burgos-Cintron, who had been arrested, indicted, convicted and sentenced to prison in 2001 while using the alias "Luis Santiago"). Based upon the information obtained from Parker and Brown, the statement of George Brown and the positive identification of the photos as being the individuals involved in the assault and shooting, warrants for the arrest of Thompson and Santiago were prepared and signed by the judicial authority on September 26, 2007.

On October 1, 2007, the warrant for the arrest of Luis Santiago (and possibly the one for Thompson also) were forwarded to the State Police Fugitive Unit by defendant, Detective Sargent First Class (DSFC), James South. Santiago's warrant was received by Detective Sargent Edward J. Fallon, who began his investigation regarding the location of Santiago. Either, or both, during the investigation in which Santiago's photo was obtained from the "Picture Link" program to be shown to Parker and Brown for identification and Fallon's investigation to locate Santiago, information was developed that Santiago had used the alias of "Luis Burgos Cintron" in the past. On October 4, 2007, through the use of investigative techniques and/or confidential informants, the plaintiff was located at his mother's home and was arrested there by Detective Fallon and later transported to the Camden Police Headquarters by DSFC South and defendant Detective Mark Cunard. There he was processed for the incident involving Parker and Brown on September 15,

5

2007, and placed in the Camden County Jail.  He was indicted by the State Grand Jury sitting in Camden County in November 2007.  On July 11, 2007 he was released from the jail and the Indictment was dismissed when, shortly before a Wade hearing was to be held concerning plaintiff's identification, Kareem Parker viewed the photo he had previously identified as being the Luis Santiago who had shot at him on September 15, 2007, and denied that it was the right Luis Santiago and subsequently identified another photo as being the correct photo of the shooter.

In 2000, plaintiff had been arrested for drug related charges in Camden and was placed in jail.  At that time, he provided the name of Luis Santiago as his correct name and was both arrested and booked under that name.  He had also used that name on 2 or 3 occasions in the past when involved with the police although he was not arrested on those occasions.  After his release from jail and eventual plea of guilty, but before he was sentenced, plaintiff took flight and remained a fugitive for approximately a year before he was captured, rearrested and placed back in Camden County Jail. He gave his plea of guilty and was convicted for the drug offenses under the name Luis Santiago.  He was sentenced to 5 years in New Jersey State Prison.  During the time he was a fugitive, he also used the name Jorge Cintron at times.  Plaintiff was sent to prison still under the name Luis Santiago and did not correct this misnomer until about a month after his incarceration in March 2001.

On, or about August 28, 2009, plaintiff filed this complaint in the United States District Court, Vicinage of Camden.  On December 23, 2010, plaintiff voluntarily stipulated, with prejudice, to the dismissal of

certain causes of action and defendants from this matter.  Defendants now bring this motion for summary judgment as to all remaining defendants and causes of action, seeking dismissal of all claims and judgment for all defendants as to all issues remaining.

## LEGAL ARGUMENT

### STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 56, "summary judgment is proper" if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  All inferences from the record are to be construed in a light most favorable to the non-moving party.  See Lang v. New York Life Ins. Co., 721 F.2d 118, 119 (3d Cir. 1983).

The burden is on the moving party to demonstrate the absence of a genuine issue of material fact.  Adickes v. S.J. Kress & Co., 398 U.S. 144, 157 (1970).  However, the non-moving party may not rest upon mere allegations, general denials, or vague statements in opposition to a summary judgment motion.  If the non-moving party's evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  See Bixler v. Central Pa. Teamsters Health & Welfare Fund, 12 F.3d 1292 (3d Cir. 1993); Trap Rock Indus. Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 980-91 (3d Cir. 1992).

The substantive law governing the dispute will determine which facts are material, and only disputes over those facts "that might affect the outcome of the suit under the governing law will properly

7

preclude the entry of summary judgment." <u>Anderson v. Liberty Lobby,
Inc.</u>, 477 <u>U.S.</u> 242, 248 (1986).  A genuine issue of material fact for
trial does not exist "unless the party opposing the motion can adduce
evidence which, when considered in light of that party's burden of proof
at trial, could be the basis for a jury finding in that party's favor."
<u>J.E. Mayime & Sons, Inc. v. Fidelity Bank</u>, 813 <u>F.</u>2d 610, 618 (3d Cir.
1987) (Becker, J., concurring).  If, however, the record as a whole
"could not lead a rational trier of fact to find for the non-moving
party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus.
Co. v. Zenith Radio Corp.</u>, 475 <u>U.S.</u> 574, 587 (1986).

<u>**POINT I**</u>

**PLAINTIFF'S FEDERAL CLAIMS AGAINST THE TROOPER
DEFENDANTS IN THEIR OFFICIAL AND/OR SUPERVISORY
CAPACITIES SHOULD BE DISMISSED BECAUSE THEY ARE
BARRED BY THE ELEVENTH AMENDMENT AND NOT SUBJECT TO
<u>LIABILITY UNDER 42 U.S.C. §1983.</u>**

Plaintiff has maintained a number of his federal claims against
Troopers August Nyekan, Jr., James South and Richard Bumbera, in their
official capacities, pursuant to 42 <u>U.S.C.</u> § 1983 (COUNTS I, II, III,
and IV).  These claims must be dismissed because they are barred by the
Eleventh Amendment and Troopers Nyekan, South and Bumbera, in their
official capacities, are not "persons" subject to liability under 42
<u>U.S.C.</u> §1983.  Further, 42 <u>U.S.C.</u> §1983 precludes recovery under a
theory of respondeat superior.

**A.  Plaintiffs' Claims Against the Trooper Defendants are Barred  by
the Eleventh Amendment and Must Be Dismissed.**

Plaintiff's claims against the Trooper Defendants should be
dismissed because they are barred by the Eleventh Amendment.  It is

8

well-recognized that State agencies and State officials acting in their official capacity cannot be sued under the principles of sovereign immunity and the Eleventh Amendment. Will v. Michigan Dep't of State Police, 491 U.S. 58, 70-71 (1989). The Eleventh Amendment to the United States Constitution makes explicit reference to the States' immunity from suits:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

> [U.S. Const. amend. XI.]

The phrase "Eleventh Amendment" immunity is

> something of a misnomer, for the sovereign immunity of the States neither derives from nor is limited by the terms of the Eleventh Amendment. Rather, as the Constitution's structure, and its history, and the authoritative interpretations by [the Supreme Court] make clear, the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today . . . except as altered by the plan of the Convention or certain constitutional Amendments.

> [Alden v. Maine, 527 U.S. 706, 712-13 (1999).]

Sovereign immunity is not merely a defense to liability; it is an immunity from suit. Fed. Mar. Comm'n v. South Carolina State Ports Auth., 535 U.S. 743, 766 (2002). The preeminent purpose of this doctrine is "to accord States the dignity that is consistent with their status as sovereign entities." Id. at 760. Sovereign immunity provides States the freedom to govern in accordance with the will of its citizens. Id. at 765. This immunity stands for the principle that States should not even be brought into federal court to answer a

9

Complaint by a private person.  Id. at 760.

The federal courts in New Jersey have uniformly recognized that suits against the State can only be brought in State court.  See, e.g., Lassoff v. New Jersey, 414 F. Supp. 2d 483, 488 (D.N.J. 2006); Kelley v. Edison Twp., 377 F. Supp. 2d 478, 482 (D.N.J. 2005); Bennett v. City of Atlantic City, 288 F. Supp. 2d 675, 679 (D.N.J. 2003); Rudolph v. Adamar of New Jersey, 153 F. Supp. 2d 528, 534 (D.N.J. 2001); Jordan v. New Jersey Dep't of Corrections, 881 F. Supp. 947, 951 (D.N.J. 1995).

Regardless of whether the suit seeks monetary damages or injunctive relief, a suit against a State or its officials is barred in federal court if the decree would operate against the sovereign.  Pennhurst State School Hosp. V. Halderman, 465 U.S. 89, 101 (1984) (citing Hawaii v. Gordon, 373 U.S. 57, 58 (1963)) (per curiam).  The type of relief sought by a private citizen is "irrelevant to the question [of] whether the suit is barred by the Eleventh Amendment." Fed. Mar. Comm'n, supra, 535 U.S. at 765 (quoting, Seminole Tribe of Florida v. Florida, 517 U.S. 44, 58 (1996)).  Noting the general rule, the Supreme Court in Pennhurst reaffirmed its previous determination that a suit is against the State if the judgment would be paid out of the State treasury or would interfere with government administration.  Pennhurst, supra, 465 U.S. at 101 n.11 (citing Dugan v. Rank, 372 U.S. 609, 620 (1963)).  Likewise, if the judgment operates to compel the State to act or to restrain it from acting, the suit is against the sovereign.  Id.

There are two limited exceptions to State sovereign immunity and neither apply to Plaintiff's claims.  Under the first exception, Congress may abrogate a State's Eleventh Amendment immunity for rights

protected under the Fourteenth Amendment.  College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999). However, the abrogation must be "an unequivocal expression of congressional intent to 'overturn the constitutionally guaranteed immunity of the several States.'"  Pennhurst, supra, 465 U.S. at 99 (quoting Quern v. Jordan, 440 U.S. 332, 342 (1979)).  42 U.S.C. §1983 does not override a State's Eleventh Amendment immunity.  Bennett v. City of Atlantic City, 288 F. Supp. 2d 675, 683 (D.N.J. 2003) (citing Quern, supra, 440 U.S. at 342).  Accordingly, the United States Supreme Court specifically held that Congress has not abrogated the immunity for actions under the Civil Rights Act of 1871, of which 42 U.S.C. §1983 is a part.  Quern, supra, 440 U.S. at 340 (citing Alabama v. Pugh, 438 U.S. 781, 782 (1978)).

The only other exception to the doctrine of Eleventh Amendment immunity is State consent to a suit.  Blatchford v. Native Village of Noatak and Circle Village, 501 U.S. 775, 779 (1991).  The State of New Jersey has never waived its sovereign immunity in the federal courts. Consent only exists when a State "makes a 'clear declaration' that it intends to submit itself" to a Court's jurisdiction.  College Sav. Bank, supra, 527 U.S. at 675-76 (quoting Great Northern Life Ins. v. Read, 322 U.S. 47, 54 (1944).  Anything less than an unequivocal waiver of immunity will not subject a State to suit.  Pennhurst, supra, 465 U.S. at 99.  The passage by the New Jersey Legislature of the Tort Claims Act, N.J.S.A. 59:1-1 et seq., re-established the doctrine of sovereign immunity for the State of New Jersey.  The Tort Claims Act declared that immunity exists for the State for all actions unless specifically

11

provided for under the Act.

Even when a State statute expressly consents to a suit in the State's own courts, consent to a similar suit in federal court will not be inferred unless the statutory language is clear that the State intended to waive Eleventh Amendment immunity. Skehan v. Board of Trustees of Bloomsburg State College, 590 F.2d 470, 487 (3d Cir. 1978), cert. denied, 444 U.S. 832 (1979). Indeed, it has been determined that the State of New Jersey has not, by enacting the New Jersey Tort Claims Act, waived its Eleventh Amendment immunity. Bennett, supra, 288 F. Supp. 2d at 683.

Here, in his Complaint, Plaintiff sues Nyekan, South and Bumbera (at least partially) in their official capacities as Troopers in the New Jersey Division of State Police and seeks compensatory and punitive damages against them. Given the above, the Eleventh Amendment bars those claims against them and they should therefore be dismissed.

**B.   Plaintiffs' Claims Against the Trooper Defendants Should Be Dismissed Because the Troopers are not a "Person" Subject to Liability Under 42 U.S.C. §1983.**

Plaintiff's allegations that the Trooper Defendants violated his federal civil rights in COUNTS I, II, III and IV should be dismissed because they are not "persons" subject to liability as defined in 42 U.S.C. §1983. While State officials literally are persons, a suit against a state official in his official capacity is not a suit against the official, but is a suit against the official's office. "As such, it is no different from a suit against the State itself." Will, supra, 491 U.S. at 71.

12

42 <u>U.S.C.</u> §1983 reads, in pertinent part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any
> State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of
> the United States or other person within the
> jurisdiction thereof to the deprivation of any
> rights, privileges or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or
> other proper proceeding for redress.   [42 <u>U.S.C.</u>
> §1983.]

To state a claim under 42 <u>U.S.C.</u> §1983, a Plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a "person" acting under color of state law. <u>West v. Atkins</u>, 487 <u>U.S.</u> 42, 48 (1988).  The statute clearly states that only a defendant who falls under the definition of "person" may be held liable under 42 <u>U.S.C.</u> §1983. <u>Brittingham v. City of Camden,</u> No. 07-190(JBS), 2007 <u>U.S. Dist</u>. LEXIS 49296, at *8 (D.N.J. July 9, 2007).

State entities are not considered to be "persons" under 42 <u>U.S.C.</u> §1983.  In <u>Quern</u>, <u>supra</u>, the United States Supreme Court specifically held that a State is not a person under 42 <u>U.S.C.</u> §1983.  <u>Id</u>. at 350. This holding was later re-affirmed by the Supreme Court.  <u>Will</u>, <u>supra</u>, 491 <u>U.S.</u> at 64.  The Court in <u>Will</u> looked to the common meaning of the word "person" and its meaning within the legislative history of the enactment of the Civil Rights Act of 1871, the precursor of 42 <u>U.S.C.</u> §1983.  The Court stated:

> Section 1983 provides a federal forum to remedy
> many deprivations of civil liberties, but it does
> not provide a federal forum for litigants who seek
> a remedy against a State for alleged deprivations
> of civil liberties.   The Eleventh Amendment bars

13

> such suits unless the State has waived its
> immunity, or unless Congress has exercised its
> undoubted power under §5 of the Fourteenth
> Amendment to override that immunity.

[Will, supra, 491 U.S. at 66 (citation omitted.)]

Further, the Court concluded that Congress did not intend to override common-law immunities, including the doctrine of sovereign immunity, when it enacted 42 U.S.C. §1983. Id. at 67. In addressing the issue of sovereign immunity, the Will Court held:

> The doctrine of sovereign immunity was a familiar
> doctrine at common law. "The principle is
> elementary that a State cannot be sued in its own
> courts without its consent." Railroad Co. v.
> Tennessee, 101 U.S. 337, 339 (1880). It is an
> "established principle of jurisprudence" that the
> sovereign cannot be sued in its own courts without
> its consent. Beers v. Arkansas, 20 How. 527, 529
> (1858). We cannot conclude that §1983 was
> intended to disregard the well-established immunity
> of a State from being sued without its consent.

[Id. at 67.]

Plaintiff alleges that the Trooper Defendants violated his civil rights guaranteed under 42 U.S.C. §1983. These civil rights claims against the troopers, in their official capacities, however, must be dismissed because they are not "persons" for purposes of 42 U.S.C. §1983.

**C. Plaintiff's 42 U.S.C. §1983 Claim Against Defendant South Should be Dismissed Because 42 U.S.C. §1983 Precludes Recovery Based Upon a Theory of Respondeat Superior.**

Plaintiff is seeking damages for violation of his federal civil rights against Defendant, Detective Sargent First Class (DSFC) James South, in his individual capacity, in COUNTS I, II, III, IV. In addition to alleging that DSFC South engaged in the activity

14

constituting each of the civil rights violations addressed by the individual COUNTS, plaintiff alleges that DSFC South did so with deliberate difference and/or reckless disregard. However, a review of the applicable facts reveals that DSFC South's role in this matter, limited as it was, arose out of his position as supervisor of the Strategic Investigation Unit of the Division of State Police and/or was confined to the transportation of the plaintiff to the Camden Police Headquarters after he was arrested by Detective Edward Fallon on October 4, 2007. Consequently, he cannot be responsible for any alleged violations of plaintiff's civil rights and all claims against him should be dismissed.

Under 42 U.S.C. §1983, liability can be imposed for conduct which "subject[s], or causes to be subjected, 'a person to a deprivation of a right granted by the United States Constitution and laws.'" Delbridge v. Schaeffer, 569 A.2d 872 (Law Div. 1994); cert. denied, Delbridge v. Franco, 513 U.S. 832 (1994). To state a claim under Section 1983, the complaint must allege specific conduct by a state official which violates a constitutional right of the Plaintiff. Ruffin v. Beal, 468 F. Supp. 482, 490 (E.D. Pa 1978).

Personal involvement is a necessary element of a Section 1983 claim, and a superior official is not liable for the acts of his subordinates merely on the basis of the superior-subordinate relationship. Monell v. Department of Social Services of City of New York, 436 U.S. 658, 690-91 (1978); Delbridge v. Schaeffer, supra, 569 A.2d 872 at 889.

Liability against a supervisor under §1983 requires that the

supervisor be personally involved in a subordinate's alleged wrongful conduct. Rode v. Dellarciprete, 845 F.2d 1195 (3d Cir. 1988); Colburn v. Upper Darby Township, 838 F.2d 663 (3d Cir. 1988), cert. denied, 489 U.S. 1065 (1989) (absent allegation of personal involvement in alleged constitutional violation, no liability could lie against police commissioner or mayor).

As is made clear by a review of the Defendants Statement of Undisputed Material Facts (SOF), DSFC South was the supervisor of the unit assigned to investigate the shooting incident in which Luis Santiago fired a pistol at Kareem Parker on September 15, 2007 and that his knowledge of the case basically comes from reading reports prepared by the investigating officers and receiving "briefings" from the detectives under his command(SOF Nos. 31 & 32). Furthermore, the actual arrest of the plaintiff was accomplished by Detective Fallon on October 4, 2007 (SOF No. 30) and the complaint and warrant for his arrest were prepared by Trooper Nyekan (SOF 20). Finally, identification of the plaintiff as Parker's assailant was made by Parker and Brown both to the original investigating officer from the Camden Police Department and to Nyekan and Bumbera after plaintiff's photo was retrieved from the "Picture Link" database by Nyekan and Bumbera (SOF Nos. 3, 7, 8, 12, 13, 14, 15, 16, 17, 18, 19, 23, 24 and 26). DSFC South simply was not involved in any of the above described actions except in a supervisory capacity.

Here, there is simply nothing alleged or proven that could support a claim for malicious prosecution, false arrest/imprisonment or violation of plaintiff's due process rights on the part of DSFC South.

16

Although plaintiff alleges that DSFC South violated his civil rights by engaging in these activities, plaintiff provides no facts to support his claim in the Complaint and the record fails to reveal any direct, personal involvement of DSFC South in these violative behaviors so as to support a viable claim under Sect. 1983.  In short, Plaintiff provides nothing beyond conclusory statements to support his claim that DSFC South either directly or personally engaged in the actions that would constitute a violation of the plaintiff's civil rights or was deliberatively indifferent to such behavior(even assuming he was aware of same).  Consequently, all claims as to DSFC South should be dismissed by the Court.

### POINT II

**THE DEFENDANT TROOPERS SHOULD BE GRANTED JUDGMENT AS TO PLAINTIFF'S FEDERAL AND STATE CLAIMS OF MALICIOUS PROSECUTION FALSE ARREST AND FALSE IMPRISONMENT AS PLAINTIFF CANNOT SATISFY THE REQUISITE ELEMENTS NECESSARY TO SUSTAIN SUCH CLAIMS.**

Although plaintiff has asserted both federal civil rights and state law claims for malicious prosecution, false arrest and false imprisonment against the defendant Troopers (COUNTS I, II, IV, VIII & IX), these claim must fail as plaintiff cannot satisfy the requisite elements necessary to sustain these claims.  In regard to the federal claim, the Third Circuit has clearly articulated what elements must be established in order to state a claim for malicious prosecution under Section 1983.

> To prove malicious prosecution under section 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal

17

proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

[Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003).]

As for the state claim, it has long been established that New Jersey requires the same elements of proof in order for a plaintiff to successfully maintain such an action. Penwag Property Co. Inc., v. Landau, 76 N.J. 595, 598(1978); Lind v. Schmid, 67 N.J. 255, (1975); Giri v Rutgers Cas. Ins. Co., 273 N.J. Super. 344, 347-48 (App. Div. 1994); Mayflower Industries v. Thor Corp., 15 N.J. Super. 139, 153 (Ch. Div. 1951); aff'd, 9 N.J. 605(!952). However, New Jersey also requires that a Plaintiff must establish that he suffered some "other special grievance different from and superadded to the ordinary expense of a defense." Penwag, supra, 76 N.J. at 598; Mayflower, supra, 15 N.J. Super. at 157 (quoting with approval from Potts v. Imlay, 4 N.J.L. 382 (Sup. Ct. 1816). And, as with a plaintiff seeking to prove a federal cause of action for malicious prosecution, the party asserting a state claim for the same remedy must establish each of its elements in order to impose civil liability. Lind v. Schmid, 67 N.J. 255, 262 (1975). If a plaintiff fails to prove any one of the elements, the cause of action must fail. Ibid.

There are two elements to false arrest. They are (1) an arrest or detention of the person against his will and (2) done without proper legal authority or "legal justification." Theodore Fleming v. United

Parcel Service, Inc. et al., 255 N.J. Super. 108 (Law Div. 1992) (citing Barletta v. Golden Nugget Hotel Casino, 580 F. Supp. 614, 617 (D.N.J. 1984). Further, as in malicious prosecution, the existence of probable cause is a defense provided and serves to validate the arrest. Bauer v. Borough of Cliffside Park, 225 N.J. Super. 38, 47 (App. Div.), certif. denied, 113 N.J. 330 (1988).

Plaintiff's claims of malicious prosecution, false arrest, and false imprisonment are unsupported by the record as there is no evidence that the Trooper Defendants acted without probable cause or with malice. Even conceding that plaintiff is able to prove certain of the forgoing elements, his claims must still fail as the plaintiff is required to meet each of them in order to sustain his burden. Johnson v. Knorr, 477 F.3d 75, 81-82 (3d Cir. 2007).

In this matter, plaintiff cannot prove the first element of the malicious prosecution claim as it pertains to defendants Bumbera and South. Criminal proceedings against the plaintiff were initiated by the filing of the affidavit, complaint and warrant against him for the alleged crimes against Kareem Parker (Ex. "G"). This affidavit, complaint and warrant were prepared and signed by Trooper Nyekan alone (SOF No. 20 and Ex. "G"). Although Detective Bumbera assisted Nyekan in the investigation and DSFC South supervised the unit, neither of them drafted or signed the documents initiating the criminal proceedings against the plaintiff. Accordingly, plaintiff cannot satisfy his obligation in meeting the elements of a claim for malicious prosecution against either Bumbera or South on that basis alone.

Further, plaintiff cannot establish that the proceeding was

19

initiated or that he was arrested and/or incarcerated without probable cause, as to any of the defendants.  Probable cause is "defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." Gerstein v. Pugh, 420 U.S. 103(1975) (quoting Beck v. Ohio, 379 U.S. 89, 91,(1964)).  Probable cause is "something less than proof needed to convict and something more than a raw, unsupported suspicion." State v. Davis, 50 N.J. 16, 23, (1967), cert. denied, 389 U.S. 1054,(1968).  This standard is meant to "safeguard citizens from rash and unreasonable interferences with privacy'" and to provide "leeway for enforcing the law in the community's protection." Gerstein v. Pugh, 420 U.S. at 112 (quoting Brinegar v. United States, 338 U.S. 160, 176 (1949)).

The defendant Troopers involved in any way in the investigation, arrest and prosecution of plaintiff for the infractions charged had sufficient probable cause to do so based upon the facts known to them at the time, including the identification of the plaintiff by the victim of the alleged crimes and an eyewitness thereto.

"Probable cause exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been committed by the person to be arrested." Orsatti v. N.J. State Police, 71 F.3d 480, 483 (3d Cir. 1995); U.S. v. Cruz, 910 F.2d 1072, 1076 (3d Cir. 1990). Plaintiff's actual guilt of the crime for which he was arrested is immaterial as to whether the arresting officers had probable cause to arrest him.  See Dowling v. City of Philadelphia, 872 F.2d 136, 141 (3d Cir. 1989) ("the proper inquiry in a section 1983 claim based on false

arrest...is not whether the person arrested in fact committed the offense, but whether the arresting officers had probable cause to believe the person arrested had committed the offense."). "When a police officer has received a reliable identification by a victim or his or her attacker, the police have probable cause to arrest." <u>Sharrar v. Felsing</u>, 128 <u>F.</u>3d 810, 818 (3rd Cir. 1997); <u>see also</u> <u>Martinez v. Simonetti</u>, 202 <u>F.</u>3d 625, 634 (2d Cir. 2000) ("[I]t is well-established that a law enforcement officer has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness.")(citation omitted).

In <u>Sharrar</u>, officers from the City of Sea Isle, New Jersey responded to a 911 call from a woman who alleged that she was assaulted. 128 <u>F.</u>3d at 814. The woman told the 911 dispatcher that the assailant was a man named "Robert Carroll." <u>Id.</u> The woman then told the first arriving officers that the assailant was her ex-husband, a man named David Brigden. <u>Id.</u> Based upon this second statement, officers set up a "temporary command post" around Brigden's residence. <u>Id.</u> at 815. The officers were told by another resident of the building that she had heard a noise "so she knew they were there." <u>Id.</u> A trained FBI negotiator was called to the scene. <u>Id.</u> Several officers with drug and explosive sniffing dogs were called to the scene. <u>Id.</u> And a nine man SWAT team was called to the scene. <u>Id.</u> The SWAT team entered the residence and secured Brigden and three other male companions without incident. <u>Id.</u> The four suspects were arraigned and charged with burglary, assault, making terroristic threats, and conspiracy. <u>Id.</u> All charges were eventually dismissed. <u>Id.</u>

The <u>Sharrar</u> opinion states that "the skepticism and careful scrutiny usually found in cases involving informants, sometimes anonymous, from criminal milieu, is appropriately relaxed if the informant is an identified victim..." <u>Id.</u> at 818 (quoting <u>Easton v. City of Boulder</u>, 776 <u>F.</u>2d 1441, 1449 (10th Cir. 1985). The court concluded that the officers had probable cause. <u>Sharrar</u>, 128 <u>F.</u>3d at 818.

Based on <u>Sharrar</u>, the Trooper defendants in this matter clearly possessed probable cause to conclude that plaintiff was the alleged perpetrator and to seek a warrant for the arrest of the plaintiff. Defendants were provided with an unambiguous identification of plaintiff by both the victim and an eyewitness to the incident beginning at the time of the initial investigation launched by the Camden City Police and continuing through the close of their own investigation. They were provided not only the names of the alleged suspects but had specific identification of the alleged shooter and his companion based upon photo identification and prior personal knowledge (SOF Nos. 3, 6, 7, 8, 10, 12, 13, 14, 15,16, 17, 18, 19, 22, and 23. See also, Exs. "A", "B", "D", "E" and "F"). See also, <u>Connor v. Powell</u>, 162 <u>N.J.</u> 397, 4009 (2000)("[w]hen the law enforcement official could reasonably have believed in the existence of probable cause, the issue of probable cause generally should be decided as a matter of law").

Furthermore, probable cause for the issuance of the warrant for arrest was found by a judicial officer (Ex. "G"), the Grand Jury returned an indictment of the plaintiff in November 2007 (Ex. "L") and the victim, Kareem Parker, did not retract his identification of the

22

plaintiff as the shooter involved until July 2008 (Ex. "N").  Finally, the plaintiff himself admits that he has used both the name "Luis Santiago" and "Jorge Cintron" (the names under which he was indicted) during either prior arrests, convictions or flights from incarceration and imprisonments and that he does not know if any of the exculpatory information about his identity, his alibi evidence or his request for a line up identification was ever given to any of the defendant Troopers during his incarceration in the Camden County Jail (SOF Nos. 36, 37, 38, 39, 40, 41, 42, and 44).

It is the function of the court to determine whether the objective facts available to the officer at the time were sufficient to justify a reasonable belief.  United States v. Glasser, 750 F.2d 1197, 1206 (3d Cir. 1984), cert. denied, 471 U.S. 1018 (1985).  A court must look at the "totality of the circumstances" and use a "common sense" approach to the issue of probable cause.  Id. at 1205. (citing Illinois v. Gates, 462 U.S. 213 (1983)).

It is clear from the undisputed facts, as well as the testimony of the plaintiff himself, that the defendants had a reasonable belief that plaintiff engaged in the conduct with which he was charged in the complaint and indictment.  Since plaintiff cannot show that there was a lack of probable cause, plaintiff's claimsof malicious prosecution, false arrest and/or false imprisonment  must be dismissed.

Plaintiff's claim of malicious prosecution is also legally insufficient because Plaintiff cannot prove that any of the defendants acted with malice in issuing the complaint and warrant for plaintiff's arrest.  There are no facts within record to support such a claim.

"Actual malice in the context of malicious prosecution is defined as either ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose." Morales v. Busbee, 972 F. Supp. 254, 261 (D.N.J. 1997).  The record here is simply devoid of any facts indicating that the Trooper defendants acted with such a mind set.  Legal malice has also been defined as either knowingly acting without probable cause - i.e., a reasonable belief or for a purpose other than securing proper adjudication." Lightning Lube, Inc. V. Witco Corp., 4 F.3d 1153, 1197 (3d Cir. 1993)].  The undisputed facts establish that at all times during and throughout the investigation and arrest of plaintiff the defendants acted according to an honest, well-intentioned and well founded belief.  Additionally, Plaintiff has not, and cannot, point to any prior encounter with the New Jersey State Police, or any of the individual Troopers, that suggests any ill motive or ill purpose underlying their actions.

Therefore, summary judgment should be granted and Plaintiff's claims in COUNTS I, II, IV, VIII and IX alleging malicious prosecution, false arrest, and false imprisonment should be dismissed.

### POINT III

**THE DEFENDANT TROOPERS ARE ENTITLED TO QUALIFIED IMMUNITY ON THE PLAINTIFF'S FEDERAL AND STATE CLAIMS OF MALICIOUS PROSECUTION, FALSE ARREST, AND FALSE IMPRISONMENT.**

**A.   Troopers Nyekan and Bumbera had Probable Cause, or a Reasonable Belief in the Existence of Probable Cause, to Issue a Complaint and Warrant for the Arrest of Plaintiff.**

The undisputed facts in this case demonstrate that it was

24

objectively reasonable for Troopers Nyekan and Bumbera to believe that plaintiff had been involved in the aggravated assault on Kareem Parker and to issue a complaint and warrant for his arrest. When these facts are examined in light of the applicable law, it is clear that both Troopers are entitled to qualified immunity.

Whether an official is shielded from liability by qualified immunity for alleged unlawful official action turns on the "objective legal reasonableness" of the action assessed in light of the "clearly established" law at the time the action was taken. Anderson v. Creighton, 483 U.S. 635 (1987).

Plaintiff has alleged that the actions of Troopers Nyekan and Bumbera constituted, inter alia, false arrest, false imprisonment, and malicious prosecution.[2]

While the above causes of action are distinct, the qualified immunity analysis is similar for both causes of action.  "[L]aw enforcement officials who 'reasonable but mistakenly' conclude that probable cause exists to initiate a criminal prosecution are entitled to qualified immunity." Luthe v. The City of Cape May, 49 F.Supp. 2d 380, 396 (D.N.J. 1999).  If the defendants had either probable cause or an objectively reasonable belief in the existence of probable cause, then each is entitled to qualified immunity and these claims must be dismissed.

A necessary element of proof to support a claim for false arrest or

_____

[2]Defendant South is excluded from this consideration as his actions in this case were administrative and/or supervisory. To the extent his involvement could be deemed direct or personal, than  qualified immunity would apply to him.

malicious prosecution is that the arrest be without lawful basis or probable cause.  Probable cause is a defense to false arrest under the United States Constitution.  See generally, <u>Luthe</u>, <u>Supra</u>, at 389; (D.N.J. 1999); <u>Green v. City of Paterson</u>, 971 <u>F.Supp.</u> 891, 900 (D.N.J. 1997); <u>Schneider v. Simonini</u>, 163 <u>N.J.</u> 336, 355 (2000); <u>Wildoner v. Ramsey</u>, 162 <u>N.J.</u> 375 (<u>N.J.</u> 2000) (holding that probable cause is an absolute defense to a false arrest claim.); see also <u>Hayes v. County of Mercer</u>, 217 <u>N.J.</u> Super. 614, 623 (App. Div.), certif. denied, 108 <u>N.J.</u> 643 (1987) (holding that the existence of probable cause will defeat a false arrest claim).

Probable cause is "defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." <u>Gerstein v. Pugh</u>, 420 <u>U.S.</u> 103(1975) (quoting <u>Beck v. Ohio</u>, 379 <u>U.S.</u> 89, 91(1964)).  The Third Circuit has stated that "[t]he determination that probable cause exists for a warrantless arrest is fundamentally a factual analysis that must be performed by the officers at the scene.  It is the function of the court to determine whether the objective facts available to the officers at the time of arrest were sufficient to justify a reasonable belief that an offense [had been] committed." <u>United States v. Glasser</u>, 750 <u>F.</u>2d 1197, 1206 (3d Cir. 1984), certif. denied, 471 <u>U.S.</u> 1018 (1985)]. A court must look at the "totality of the circumstances' and use a "common sense" approach to the issue of probable cause. <u>Id</u>. at 1205 (citing <u>Illinois v. Gates</u>, 462 <u>U.S.</u> 213 (1983)).

However, the standard for granting qualified immunity is less stringent than the standard for establishing probable cause. "[I]n §

1983 cases involving alleged violation of the Fourth Amendment, . . . the inquiry is whether a reasonable officer could have believed that his or her conduct was lawful, in light of the clearly established law and the information in the officer's possession." Sharrar v. Felsing, 128 F.3d 810, 827 (3d Cir. 1997)(citing Hunter v. Bryant, 502 U.S. 224 (1991) (per curiam)).

Police officers "who reasonable but mistakenly conclude that their conduct comports with requirements of the Fourth Amendment are entitled to immunity." Sharrar, supra, 128 F.3d at 826 (quoting Hunter, supra, 502 U.S. at 227); see also Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 2159; Luthe v. City of Cape May, supra. at, 389 (D.N.J. 1999). In cases involving claims for unlawful arrest and malicious prosecution, qualified immunity must be granted when a police officer reasonably, albeit mistakenly, concludes that probable cause existed to arrest, detain and initiate the criminal prosecution. [See Luthe, Id. at 395 (citing Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995))].

In the context of a qualified immunity analysis, this is a question of law for the court to decide. The court must determine whether the facts known to the officer at the time of the alleged Fourth Amendment violation could support an objectively reasonable belief that probable cause existed. Sharrar, supra, 128 F.3d at 828 (construing Rogers v. Powell, 120 F.3d 446, 455-57 (3d Cir. 1997)). See also, Saucier v. Katz, supra. at 2158-2159.

The only time the standard is not satisfied is when, on an objective basis, it is obvious that no reasonably competent officer

would have believed his conduct was lawful.  The qualified immunity doctrine provides ample room for mistakes in judgment and protects "all but the plainly incompetent or those who knowingly violate the law". Saucier v. Katz, supra. at 2157 (citing Malley v. Briggs, 475 U.S. 335 (1986)).

The circumstances surrounding the incident in question, including, but not limited to, the victim and an eyewitness specifically naming and identifying photos of the alleged criminal perpetrators, the plaintiff admittedly using the alias of "Luis Santiago", the name of the person identified as the shooter in this incident and the plaintiff testifying that he has no information that the defendant Troopers were aware of his alibi defense or his challenge to the shooter's identification prior to the victim's recantation in July 2008, disclose substantial grounds for the defendants to have concluded that there was legitimate justification under the law to issue a complaint and warrant for plaintiff's arrest.

**B.    The Trooper Defendants are Entitled to the Good Faith Immunity Provided Under N.J.S.A. 59:3-3 for Their Actions in Investigating, Identifying, and Filing the Complaint and Warrant for Plaintiff's Arrest as New Jersey has Adopted the Federal Test of Objective Reasonableness.**

Law enforcement officials are entitled to qualified or "good-faith' immunity under certain circumstances.  "[A] public employee is not liable if he acts in good faith in the execution or enforcement of any law." N.J.S.A. 59:3-3.  New Jersey has adopted the same standard of objective reasonableness which applies in Sect. 1983 cases to define the good faith immunity under the Tort Claims Act.  Wildoner v. Borough of Ramsey, 162 N.J. 375 (2000); Gurski v. New Jersey State Police Dept.,

28

242 N.J.Super. 148, 158 (App.Div. 1990); Hayes v. County of Mercer, 217 N.J.Super. 614, 622 (App.Div. 1987); Tofano v. Reidel, 61 F.Supp. 2d 289, 307 (D.N.J. 1999).

The analysis of good-faith immunity offered by the Tort Claims Act is coterminous with the analysis of objective reasonableness under Sect. 1983 qualified immunity.  Because defendants Nyekan and Bumbera are entitled to qualified immunity under the objective reasonableness test, they are also entitled to good-faith immunity under the Tort Claims Act as to any state related or common law claims of malicious prosecution.

### POINT IV

**PLAINTIFF IS NOT ENTITLED TO THE RELIEF SOUGHT IN COUNT III OF HIS COMPLAINT BECAUSE IT FAILS TO ADEQUATELY PLEAD A CONSTITUTIONAL VIOLATION UNDER 42 U.S.C. §1983 CONCERNING THE MANNER OF THE PHOTO IDENTIFICATION EMPLOYED BY DEFENDANTS.**

42 U.S.C. §1983 does not create substantive rights, rather it is a vehicle for vindicating federal rights established by the United States Constitution and federal statutes.  See Baker v. McCollan, 443 U.S. 137, 145 (1979).  To state a cause of action under §1983, a plaintiff must allege (1) a violation of a right secured by the Constitution or federal law; and (2) that the violation of that right was committed by a person acting under the color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988).  42 U.S.C. §1983 provides a "remedy for deprivations of specific constitutional rights, not generalized allegations of constitutional deprivations." Trautvetter v. Quick, 916 F.2d 1140, 1148 (7th Cir. 1990).

Failure to allege a specific constitutional right is problematic

for two reasons.  First, the defendants are not given fair notice of the grounds of plaintiff's claims.  Secondly, the courts cannot properly evaluate the sufficiency of a plaintiff's Complaint.  <u>See</u> <u>Codd v. Brown</u>, 949 <u>F.</u>2d 879, 882 (6th Cir. 1991).  For these reasons, where a plaintiff fails to identify a right, privilege or immunity secured by the Constitution that was violated, dismissal of the cause of action is proper.  <u>See</u> <u>Id.</u>

In COUNT III of the Complaint, plaintiff fails to articulate with any specificity the constitutional violation caused by the defendants in regard to the procedure utilized to establish the photo identification of the alleged assailants once they were named and identified by Kareem Parker and George Brown, Sr.  The Complaint merely states generally that defendants "...deprived Plaintiff of his substantive and procedural due process rights and equal protection rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and state law, without due process of law" (<u>See</u> Plaintiff's Complaint at Par. 116).  Besides alleging that defendants "...failed to follow procedure..." (See Plaintiff's Complaint, Par. 115), plaintiff does not identify the specific constitutional rights allegedly infringed by the defendants, which is improper under the pleading requirements for a §1983 claim.  Thus, plaintiff's claims pursuant to §1983 must be dismissed.

Initially, it must be pointed out that even if it had been determined that one, or more, of the trooper defendants did not adhere to the policies established by the New Jersey Attorney General concerning the conduct of a photo array or lineup, (which defendants do not concede), and that he was arrested and prosecuted thereafter, such

a result would not establish that a violation of plaintiff's rights under the Fourth or Fourteenth Amendment took place.  Whether an arrest is unlawful under state or local law has never been the determinative factor in considering whether that arrest is unreasonable, per se, for pursuant to the Fourth Amendment to the Constitution.  Rather, it is the reasonableness of the arrest that is the central consideration.  United States v. Laville, 480 F.3d 187, 192, 194 (3d Cir. 2007);(See also, Andujar v. Rodriguez, 480 F.3d 1248, 1252 n.4 (11th Cir. 2007).  In this regard the case of Thompson v. City of Chicago, 472 F.3d 444, 445 (7 th Cir. 2006), is particularly instructive. There, an officer was sued for his use of force during a rapidly evolving scenario in which the plaintiff attempted to evade arrest by leading police on a high speed chase, crashing his car and resisting arrest. Plaintiff sought to introduce evidence of the officer's violation of internal policies governing the use of force. The court excluded such evidence, finding that it was irrelevant to the jury's determination of whether his actions towards plaintiff were "objectively reasonable" under the Fourth Amendment. See also, Jones v. Chieffo, 883 F.Supp. 498, 507 (E.D. Pa. 1993) (finding that an officer's actions may have violated state law, police directives or constituted a common law tort, but do not state a claim for constitutional deprivation of due process).

Next, it has been held that the use of a single photograph to make an identification, in and of itself, is neither inherently unfair or unreliable. State v. Farrow, 61 N.J. 434, 453(1972) cert. denied, 410 U.S. 937(1973); State v. Matlack, 49 N.J. 491, 498(1987).  Rather, if there is a question as to the suggestiveness of the procedure used by

31

the police in a photo identification, the test was whether under the "totality of the circumstances", the identification was reliable, even though the methodology employed may have been suggestive. Neil v. Biggers, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed. 2d 401, 411 (1972). (See also, Simmons v United States, 390 U.S. 377, 384 (1968) wherein the Supreme Court established a two step process to determine the admissibility of out of court identifications where the procedure utilized by the police might be impermissibly suggestive). In the final analysis, the Court has decided that "reliability is the linch-pin in determining the admissibility of identification testimony". Manson v. Braithwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed. 2d 140, 154 (1977). This two step approach to the consideration of the admissibility of out of court identifications has been adopted by the courts of New Jersey. State v. Herrara, 187 N.J. 493, 504 (2006); State v. Madison, 109 N.J. 223, 233, 536 A.2d 254 (1988). In determining reliability, there are several factors that must be considered: the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of any prior description of the criminal, the level of certainty demonstrated at the confrontation and the time between the confrontation and the crime. Manson, supra, 432 U.S. at 114, 97 S.Ct. at 2253, 53 L.Ed. 2d at 154. Here, there can be no doubt that multiple identifications made by both the victim, Kareem Parker, and the eyewitness, George Brown, Sr., based on their self expressed long term familiarity with both assailants had the clear "ring of reliability" on which the defendants could have depended in formulating their decision that the plaintiff was, in fact,

32

the Luis Santiago who had fired a weapon at Mr. Parker.  Thus, even if the procedure of showing only the one photograph to both witnesses could reasonably be characterized as suggestive, the overwhelming indications of reliability provided by the identifications of Parker and Brown far outweighed the possibility of misidentification as far as the defendants were concerned. Herrara, supra, 187 N.J. at 509.

Finally, defendants assert that, in reality, the display of the photograph of Luis Santiago obtained from the "Picture Link" data base was not so much for purposes of identifying a suspect in a photo array or lineup as it was for the purpose of confirming the identification of the shooter previously made by both Parker and Brown to both the Camden and State Police and thus, a strict adherence to the Attorney General's Guidelines concerning a photo array/lineup was neither applicable or warranted (SOF 25). Farrow, supra, 61 N.J. at 453.

**POINT V**

**ALL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY FOR THEIR ACTIONS IN ANY WAY RELATED TO THE INVESTIGATION ARREST OR PROSECUTION OF THE PLAINTIFF.**

It is undisputed that government officials may claim the defense of qualified immunity to suits filed pursuant to 42 U.S.C. §1983.  See e.g., Procunier v. Navarette, 434 U.S. 555, 561-62 (1978).  Qualified immunity for a federal civil rights violation balances the interest of the plaintiff in obtaining a remedy for civil rights violations with the public's interest in the vigorous exercise by public officials of duly-imposed public power.  Harlow v. Fitzgerald, 457 U.S. 800 (1982). The immunity accommodates these competing interests by affording a zone

within which government officials are not liable for damages when they act pursuant to official authority in a reasonable, but mistaken manner. Anderson v. Creighton, 483 U.S. 635 (1987). Because the immunity seeks to encourage the vigorous exercise of public power in the public interest, the immunity is an immunity from suit, as well as defense to liability from damages. Mitchell v. Forsyth, 472 U.S. 511 (1985).

The test to determine whether an official's actions are protected by a qualified immunity turns on the objective legal reasonableness of the actions, assessed in light of the legal rules that were clearly established at the time the action was taken. Anderson, 483 U.S. at 637. The United States Supreme Court holding in the case of Saucier v. Katz, 533 U.S. 194 (2001) clarifies the standard to be applied when a qualified immunity defense is asserted. Specifically, the Court stressed that the "clearly established" inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Id. at 199. See also, Wilson v. Layne, 526 U.S. at 615 (the right allegedly violated must be defined with the appropriate level of specificity before a court can determine if it was clearly established). "The question," the Court said, "is what the offic[ial] reasonably understood his or her powers and responsibilities to be, when he or she acted, under clearly established standards." Id. at 202. This approach is amenable to the resolution of claims on a pretrial motion to dismiss. Fuchilla v. Prockop, 682 F.Supp. 247, 254 (D.N.J. 1987)(citing Czurlanis v. Albanese, 721 F.2d 98, 108 n.8 (3d Cir. 1983)).

The qualified immunity defense requires a multi-step analysis.

34

See, Giuffre v. Bissell, 31 F.3d 1241, 1255 (3d Cir. 1994).  The first step is to determine whether the civil right alleged to be violated was clearly established at the time the violation occurred.  Ibid.  This inquiry requires analysis of the corollary question of whether plaintiff has asserted a violation of a constitutional right at all.  Seigert v. Gilley, 500 U.S. 233 (1991); Giuffre, 31 F.3d at 1255.  Only if the first part of the test is met does the court proceed to the second part, i.e., determining whether it would be clear to a reasonable official that his or her conduct was unlawful in the situation he or she confronted.  Anderson, 483 U.S. at 637.

As previously argued in Point IV of this brief, plaintiff fails to plead, with any specificity, an alleged constitutional violation as it relates to the photo identification procedures used by the defendants. However, assuming, arguendo, that plaintiff did properly plead that alleged constitutional violation, or any other violation of his federal constitutional rights, plaintiff still cannot establish that the defendants violated plaintiff's constitutional rights.

While investigating the allegations of an aggravated assault made by Kareem Parker and supported by other witness statements and eyewitness identifications the evidence led the defendants to believe that plaintiff was, in fact, the Luis Santiago who had  engaged in the unlawful conduct described by Mr. Parker and the other witnesses. Consequently, plaintiff was arrested, the prosecutor presented the evidence and testimony to the grand jury and  the grand jury returned an indictment (SOF Nos. 1 to 34).   Although plaintiff was eventually determined not to be the correct "Luis Santiago" and the indictment was

35

dismissed(SOF Nos. 45 & 46), the defendants, as well as a grand jury, reasonably believed there was sufficient evidence to arrest and prosecute plaintiff. "The Constitution does not guarantee that only the guilty will be arrested.  If it did, §1983 would provide a cause of action for every defendant acquitted --indeed, for every suspect released." Baker v. McCollan, 443 U.S. 137, 145 (1979).  Accordingly, plaintiff has failed to establish that a constitutional right was violated.

Alternatively, if the Court finds that plaintiff has stated a claim of a constitutional violation and the constitutional law was clearly established at the time the alleged violation occurred, the court must then take the next analytical step and determine whether the actions of the defendants were objectively reasonable as a matter of law, given the circumstances presented to them at the time they acted. Anderson, 483 U.S. at 637. See also, Sharrar v. Felsing, 128 F.3d 810, 827 (3d Cir. 1997).  In cases involving claims for malicious prosecution(as well as false arrest and/or imprisonment), the analysis turns on whether the officials reasonably but mistakenly concluded that probable cause existed to make the arrest and initiate the criminal prosecution.  See Luthe v. City of Cape May, 49 F.Supp. 2d. 380, 395 (D.N.J. 1999).

Qualified immunity protects government officials unless they act in a "plainly incompetent" manner or "knowingly violate the law." Acierno v. Cloutier, 40 F.3d 597, 620 (3d Cir. 1994)(en banc)(quoting Malley v. Briggs, 475 U.S. 335, 341 (1996)).  The only time the standard is not satisfied is when, on an objective basis, it is obvious that no reasonable competent officer would have believed his conduct was lawful.

36

The qualified immunity doctrine provides ample room for mistakes in judgment and protects "all but plainly incompetent or those who knowingly violate the law. <u>Saucier v. Katz</u>, <u>supra</u>. at 2157.

Even if it can be determined that the defendants were in error in any of the actions they took in regard to the investigation, arrest or prosecution of the plaintiff(which is not conceded) there is no showing that any defendant was either incompetent or knowingly violated the clearly established law in effect at the time of their actions and thus each of them would be entitled to qualified immunity for those actions.

<u>**CONCLUSION**</u>

For these reasons, Defendant Trooper Garrett Cullen and the State of New Jersey respectfully request that the Court grant summary judgment and dismiss all remaining claims made against them by Plaintiff, with prejudice.

Respectfully submitted,

PAULA T. DOW
ATTORNEY GENERAL OF NEW JERSEY


By: __s/Vincent J. Rizzo, Jr._____
      Vincent J. Rizzo, Jr.
      Deputy Attorney General


Dated: January 7, 2011

37