**WEISBERG LAW, P.C.**
BY:  Matthew B. Weisberg
Graham F. Baird
7 South Morton Ave.
Morton, PA 19070
(610) 690-0801
Fax (610) 690-0880
Attorney for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(Camden Vicinage)

| | |
|---|---|
| LUIS BURGOS-CINTRON, : | |
| : | Case: 09-cv-4470 |
| Plaintiff, : | |
| v. : | |
| : | |
| NYEKAN, et al. : | |
| : | |
| Defendants. : | |
| : | |

## PLAINTIFF RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS

Plaintiff, Luis Burgos-Cintron, by and through his undersigned attorneys, hereby responds to the Statement of Undisputed Facts filed by Defendants, August Nyekan, Jr. ("Nyekan"), Richard Bumbera ("Bumbera"), James South ("South"), Mark Cunard ("Cunard"), the New Jersey Division of State Police, the New Jersey Division of State Police Strategic Investigations Unit and the State of New Jersey collectively ("Police Defendants"), and Plaintiff avers as follows:

1-6.     Admitted.

7-8.     Admitted in part; Denied in part.  It is admitted that Kareem Parker ("Parker") identified the assailants as Luis Santiago ("Santiago") and Joseph Thompson ("Thompson") and further, advised Defendants Bumbera and Nyekan that he attended high school with the alleged assailants.  Further, Parker never identified Plaintiff, Luis

Burgos-Cintron, as a suspect in the attempted shooting. The overall description as to how Parker came to identify Santiago as the shooter is far more complicated and involved than Defendants have set forth in their statement of facts, as such, please see Plaintiff's statement of facts set forth below.

9-11.   Admitted.

12.   Denied as stated. Plaintiff has no knowledge or information as to whether George Brown, Sr. ("Brown") "described the entire incident." It is admitted that Brown provided a recorded statement to Defendants Bumbera and Nyekan, however Plaintiff objects to any characterization of that statement as it is a writing attached hereto and speaks for itself.

13.   Admitted.

14-18. Denied as stated. Brown's statement speaks for itself in its entirety. By way of further answer, it is admitted that Parker identified the assailants as Santiago and Thompson and further, advised Defendants Bumbera and Nyekan that he attended high school with the alleged assailants. Further, Parker never identified Plaintiff, Luis Burgos-Cintron as a suspect in the attempted shooting. The overall description as to how Parker came to identify Santiago as the shooter is far more complicated and involved than Defendants have set forth in their statement of facts, as such, please see Plaintiff;s statement of facts set forth below.

19.   Denied as stated. Whether a photo lineup or array was required is a conclusion of law to which no response is required. Further, it is Plaintiff's contention that the manner in which Defendants "confirmed identification" of the alleged shooter was improper and against law, public policy, the New Jersey attorney general's practices and suggested

procedures, violated Plaintiff's well established constitutional rights, and otherwise rife with error.

20. Denied as stated. Nyekan applied for and was issued a warrant for Plaintiff, Luis Burgos-Cintron, not the actual shooter, Luis Santiago. The remaining Defendants arrested Plaintiff. It is undisputed that Plaintiff was not a participant in the shooting and was arrested anyway.

21. Admitted.

22. Denied as stated. Defendant Bumbera's testimony speaks for itself in its entirety.

23. Denied. Defendants badly mischaracterize the testimony of Bumbera. At no time, did Bumbera ever testify that he or Nyekan "pressed" the witnesses to the alleged shooting for identification. To the contrary, a close inspection of the investigation report reveals facts and descriptions of the alleged shooters which were completely ignored by both Bumbera and Nyekan, as such, please see Plaintiff's Statement of Facts set forth below.

24-26. Denied. Defendants never presented Parker or Brown with a photograph of Luis Santiago, the alleged shooter. The Defendants presented Parker and Brown only with one photograph of Plaintiff, Burgos-Cintron, and one photograph of Thompson. The remaining allegations set forth in these paragraphs are conclusions of law, not statements of fact, and, as such, should be stricken.

27-28. Denied as stated. Defendants Nyekan and Bumbera referred the matter to Detective Fallon, who received the request to arrest Plaintiff, Luis Burgos Contron, not Luis Santiago, the alleged shooter. It is undisputed that the Plaintiff had nothing to do with the alleged shooting.

29.     Denied.  Defendants badly mischacterize the cited testimony of Defendant Fallon. He testified that he does not recall anything specifically with regards to the arrest of Plaintiff, other than it happened.

30.     Admitted in part; Denied in part.  It is admitted that Plaintiff was arrested at his mother's house in Camden by Defendant Fallon, Cunard and South.  It is denied that the Plaintiff was arrested pursuant to the warrant.  The Plaintiff was arrested without probable cause and was not the individual identified by Parker and Brown.  The individual identified by Parker and Brown was Luis Santiago, not Luis Burgos-Cintron.

31-33.  Admitted.

34.     Denied as stated.  The "true bill" referred to in the Defendants' statement of facts speaks for itself in its entirety.

35.     Admitted.

36.     Denied.  The cited testimony of the Plaintiff speaks for itself in its entirety. Plaintiff never testified that he "used a fake name to get out of jail."

37.     Admitted in part; Denied in part.  It is admitted that in January of 2000, Plaintiff used the name Luis Santiago as an alias.

38-39.  Admitted.

40.     Admitted in part; Denied in part.  It is admitted, Plaintiff never showed up for sentencing in his prior conviction and a bench warrant was issued for his arrest. Defendants wild mischaracterizations of the testimony in this case is denied.

41.     Denied as stated.  Plaintiff is without knowledge of information necessary to form a belief as to the truth or falsity of the information set forth herein, specifically whether "all" information relating to the Plaintiff's 2000 arrest and conviction identified Plaintiff

as "Luis Santiago."  It is admitted that the indictment and warrant on the 2000 conviction were issued for Plaintiff under the name of Luis Santiago.

42.     Admitted.

43.     Admitted.

44.     Denied as stated.  Plaintiff repeated advised the arresting officers Defendants Fallon, South and Cunard, that he did not commit the crime that he was charged with.  He also testified that he showed the arresting officers his driver's license.  By way of further answer, the statements set forth in paragraph 44 of the Defendants' statement of facts contain legal conclusions and, as such, should be stricken.

45.     Admitted in part; Denied in part.  During the initial investigation, Defendants never presented Parker or Brown with a photograph of Santiago, the alleged shooter.  The Defendants presented Parker and Brown only with one photograph of Luis Burgos-Cintron, and one photograph of Thompson.  During preparation for Plaintiff's trial on or about July 9, 2008, Defendant Nyekan presented Parker with a photograph of the Plaintiff and discussed the incident.  At that time, Parker explained to Nyekan that he had never seen Plaintiff before, did not know Plaintiff, that Plaintiff was not Luis Santiago, and that Plaintiff did not have anything to do with the shooting.  The remaining allegations set forth in these paragraphs are conclusions of law, not affirmative statements of fact, and, as such, should be stricken.

46.     Admitted.

WHEREFORE, Plaintiff requests this Honorable Court deny Defendants' Motions for Summary Judgment.

**PLAINTIFF'S COUNTER-STATEMENT OF MATERIAL FACTS IN DISPUTE**

1. Plaintiff is Luis Angel Burgos-Cintron. (Exh A. Plaintiff's birth certificate.) (Exh. B. Plaintiff's driver's license.)

2. In 2000, Plaintiff was arrested and convicted for possession of a controlled substance with the intent to distribute, and at that time he provided an alias to the Camden Police. (Exh. C., Plaintiff's deposition transcript, p. 12-13.)

3. The alias Plaintiff used in 2000, was Luis Santiago. (Exh. C., p. 13.)

4. Plaintiff was convicted and served thirty-three months in New Jersey State Prison on the 2000 charge and was released in March, 2003.

5. Plaintiff never used the Luis Santiago alias at any time after January 2000. (Exh. C.; p. 14.)

6. Plaintiff successfully completed his parole without any incident and has not had any negative police contact (other than the instant matter) since his 2000 conviction. (Exh. C., p. 19).

7. At all times Plaintiff was gainfully employed In Philadelphia, at Woody's Bar and the Gold Club, where he worked two full time jobs as a bar back and club security. (Exh. C. pp. 28-33).

8. On October 4, 2007, Plaintiff received a phone call from his sister stating that she and Plaintiff's mother, Rosa Cintron, had separately been contacted that day by unknown members of the police Defendants, and that these agencies were looking to speak with Plaintiff in relation to an attempted murder. (Complaint ¶ 19.)

9. In response, Plaintiff went to his mother's house, returned the police Defendants' call, and spoke to Defendant Fallon. (Complaint ¶ 20.)

10. Plaintiff advised Defendant, Fallon that a mistake had been made, and that Plaintiff had not had any role in an attempted murder. (Complaint ¶ 21.)

11. In response, Defendant, Fallon advised Plaintiff to stay at his mother's house and that Plaintiff would be going to the prosecutor's office to clear up the confusion. (Complaint ¶ 22.)

12. Defendant, Fallon did not give Plaintiff any information or details about the supposed attempted murder, and stated that officers would arrive at Plaintiff's mother's home. (Complaint ¶ 24.)

13. Defendant Fallon never had any conversations with Plaintiff concerning the crime for which he was being charged and arrested.

14. Plaintiff was arrested by Defendants nineteen days after the alleged shooting/attempted murder occurred.

15. On September 15, 2007, Defendant New Jersey State Police Department began to investigate the attempted murder of Kareem Parker ("Parker").

16. On the above date, Parker was involved in a physical altercation with Thompson.

17. At some point during the altercation, an individual indentified as Luis Santiago brandished a .380 pistol and began firing at Parker. (Exh. D, Statement of George Brown).

18. Plaintiff does not own a gun.

19. The description of Santiago provided to the Camden Police Department was a Hispanic male, 5 feet tall, with braids in his hair. (Exh. F, Initial Police Report).

20. In contrast, Plaintiff is approximately 6 feet tall, weighs approximately 270 pounds, and at all times material had short, cropped hair. (Complaint ¶ 44.)

21. Shortly after the initial report, the investigation of the above 2007 incident was transferred from the Camden Police Department to police Defendants, where Defendants, Bumbera and Nyekan took over the investigation.

22. In his statement to Bumbera and Nyekan, Parker stated that he went to school with Thompson and Santiago.  (Exh. D.)  (Exh. G., Nyekan Deposition transcript, p. 18.)

23. Plaintiff did not go to school with Parker.  (Complaint ¶ 47.)

24. Bumbera and Nyekan interviewed Parker but did not coordinate a lineup nor even perform a photograph identification for Thompson or Santiago as both Defendants viewed this procedure as unnecessary.  (Exh. G.; Exh. H., Bumbera Deposition transcript, p. 12.)

25. Bumbera and Nyekan also identified a witness to the above incident, George Brown, Sr. ("Brown"), from a surveillance video and Brown's presence during Bumbera and Nyekan's interview of Parker.  (Exh. D.)

26. Brown stated, in a sworn statement, that Brown went to high school with Santiago and Thompson, and has known them since that time.  (Exh. D) (Exh. E; Investigation Report).

27. Plaintiff attended Camden High School, beginning in or around 1996 and leaving approximately two (2) years later, prior to Parker, Brown, Santiago, and Thompson's attendance.  (Complaint ¶ 52.)

28. Plaintiff does not know Parker, Brown, Santiago, and Thompson.  (Complaint ¶ 53.)

29. Brown further told Bumbera and Nyekan that he and Santiago had been involved in an verbal dispute on September 13, 2007, in New Jersey at the same store where the attempted murder occurred.  (Exh. D).

30. Brown told Bumbera and Nyekan that on the date of the incident, he and Santiago had argued in front of the Mini Market where the shooting took place.  (Exh. D, p. 5).

31. Santiago's niece was present during the initial verbal altercation.  (Exh. D, p. 5).

32. Santiago advised Brown that he was going to drop off his niece and return, which he did.  (Exh. D, p. 5-12).

33. Santiago turned down Biederman Avenue in Camden to take his niece home and when he returned, he had changed his white t-shirt to a black t-shirt.  (Exh. D, p. 5).

34. When he returned, Brown observed Santiago brandish a .380 pistol, and attempt to shoot Parker.  (Exh. D, p. 10-11).

35. Brown informed Bumbera and Nyekan that he had experienced numerous problems in the past with both Santiago and Thompson.  (Exh. D, p. 7.)

36. At no time was Burgos-Cintron in the area of the shooting.

37. Burgos-Cintron had nothing to do with the shooting.

38. As Plaintiff was working in Philadelphia during the altercation, it was impossible that Plaintiff was in New Jersey to be involved in the altercation.  (Exh. I; letters from family and employers).

39. Plaintiff also supplied Defendants with statements from family members and friends who stated that Plaintiff was with them from approximately 1:30 p.m. until 9:30 p.m. on the date of the shooting.  (Exh. J.)

40.     Defendant Nyekan was involved in the prosecution of Plaintiff, including gathering evidence, and preparing witness statements.

41.     Defendant Nyekan was involved with preparing Parker to testify against Plaintiff on July 9, 2008, wherein Parker explained to Nyekan that Plaintiff had nothing to do with shooting him. (Exh. G., pp. 28-30).

42.     Defendants Nyekan and Bumbera possessed information concerning exculpatory evidence which was disregarded, including but not limited to, the fact that the alleged shooter, Santiago attended school with Parker and Brown, that Plaintiff was named Luis A. Burgos-Cintron, that Plaintiff lived in Philadelphia at the time of the shooting, not Camden, that Plaintiff was working at the time of the incident, that there were multiple individuals named Luis Santiago identified in picture link and that the physical description of the alleged shooter, varied wildly from a description of the Plaintiff.

43.     Importantly, Bumbera and Nyekan knew there was more than one Luis Santiago in the Picture Link database.  (Exh. H., p. 13-16.)

44.     Bumbera acknowledged that " you may find this hard to believe, but people don't give their real name every time they're arrested."  (Exh. H, p. 12.)

45.     Bumbera knew that photograph identifications based on name only are unreliable.

46.      Nonetheless, Bumbera and Nyekan presented Parker and Brown with one photograph of Luis Burgos-Cintron rather than photographs of all Luis Santiago's contained in the Picture Link database.  (Exh. G. p. 26-28).

47.     Bumbera and Nyekan failed to perform any other investigative work despite the knowledge that there were more than one Luis Santiago in the Picture Link Database. (Exh. G; Exh. H.).

48. Bumbera and Nyekan never attempted to find the .380 pistol, and never interviewed Plaintiff. (Exh. G.; Exh. H.)

49. The shooting occurred at or around 2:30 p.m. on September 15, 2007. (Exh. D.)

50. Bumbera freely admits that a name and photograph identification is only one component of obtaining a successful clearance of a shooting case. (Exh. H, pp. 18-20.)

51. In or around 2001, the New Jersey Attorney General developed and adopted Guidelines ("Guidelines") to improve police procedures and to ensure the accuracy of identifications. (Exh. J.)

52. Per the Guidelines, the lineup should include a photo that resembles the suspect's description or appearance at the time of the incident if multiple photos of the suspect are reasonably available. (Exh. J, Section IE3).

53. Bumbera and Nyekan showed Brown one photograph of Plaintiff, taken at or around the time of Plaintiff's release from jail in or around 2003, regarding the 2000 arrest for drug offenses.

54. The photograph did not substantially portray how Plaintiff looked at that time as the photograph showed Plaintiff's hair in braids. (Complaint ¶ 66.)

55. When Plaintiff was arrested in 2001, his hair was cropped short, as it was again in 2007. (Complaint ¶ 67.) (Exh. L, photograph of Plaintiff.)

56. Per the Attorney General's Guidelines, a double-blind procedure is to be conducted for photo identification, meaning the officer conducting the photo array should have nothing to do with the case and not know who the suspect is. (Exh. K, Section IA)

57. Here, the investigating officers, Bumbera and Nyekan showed the Brown the photograph. (Exh. G; Exh. H.)

58.	Plaintiff supplied alibi information, birth records, school transcripts, and witness statements, all of which was ignored by Defendants, City of Camden, State of New Jersey, and Camden City Police Department.

59.	Plaintiff was arrested based upon the investigation compiled by Defendants.

60.	On the warrant for Plaintiff's arrest, Plaintiff's occupation is identified as "drug dealer." (Exh. M).

61.	After his arrest, Plaintiff's bail was set at $250,000.00, which Plaintiff could not afford. (Complaint ¶ 77.)

62.	As a result of the bail, Plaintiff was incarcerated in the Camden County Prison. (Complaint ¶ 78.)

63.	In or around April 2008, Plaintiff's bail was reduced to $100,000.00, which sum Plaintiff still could not afford. (Complaint ¶ 79.)

64.	Plaintiff was charged by State, with six (6) offenses, including attempted murder, multiple counts of aggravated assault, and multiple counts of possession of a weapon for unlawful purpose which included an affidavit by Nyekan. (Exh. N)

65.	Plaintiff was wrongfully imprisoned from October 4, 2007 until July 10, 2008. (Complaint ¶ 84.)

66.	Plaintiff served approximately 10 months in prison where he was subjected to severe deprivation of his privacy and liberty interests, and substantial physical and emotional pain and suffering.

67.	Plaintiff suffered a loss of earning capacity, employment, and wages during his incarceration.

WHEREFORE, Plaintiff requests this Honorable Court deny Defendants' Motion for Summary Judgment.

                                                        **WEISBERG LAW, P.C.**

                                                        <u>/s/ Matthew B. Weisberg</u>
                                                        Matthew B. Weisberg, Esquire
                                                        Graham F. Baird, Esquire
                                                        Attorneys for Plaintiff