UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(CAMDEN VICINAGE)

| | | |
|---|---|---|
| LUIS BURGOS-CINTRON, | : | |
| | : | |
| Plaintiff, | : | NO.:   09-cv-4470 (JHR) |
| v. | : | |
| | : | |
| NYEKAN, et al. | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

**<u>PLAINTIFF, LUIS BUSGOS-CINTRON'S BRIEF IN RESPONSE TO ALL
DEFENDANTS' SUMMARY JUDGMENT</u>**

Respectfully submitted by:

**WEISBERG LAW, P.C.**

<u>/s/ Matthew B. Weisberg</u>
Matthew B. Weisberg
Graham F. Baird
7 South Morton Ave.
Morton, PA 19070
(610) 690-0801
Fax (610) 690-0880
Attorneys for Plaintiff

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES                                                                2

I.    INTRODUCTION                                                                  5

II.   STATEMENT OF FACTS                                                            5

III.  LEGAL STANDARD FOR SUMMARY JUDGMENT                                           9

IV.   LEGAL ARGUMENT                                                               10

    A. Defendants, Troopers Augustus Nyekan, Jr., James South,
       Mark Cunard, Richard Bumbera, New Jersey Division of
       State Police, and New Jersey Division of State Police Strategic
       Investigations Unit Are All Subject to Liability Under
       42 U.S.C. §1983, Arising Out of the Misidentification and
       Subsequent Malicious Arrest of the Plaintiff.                               10

    B. In opposition to Defendants' Motion for Summary Judgment,
       there exists material issues of fact, as well as reasonable inferences
       which may be drawn from those facts, relating to whether
       Defendants, Troopers perpetrated a malicious prosecution, false
       arrest and false imprisonment of Plaintiff.                                 13

    C. In opposition to Defendants' Motion for Summary Judgment.
       Defendants, Troopers are not entitled to qualified immunity as to any
       of the Plaintiff's Federal or State claims in this matter.  Further,
       Defendants, Troopers are not entitled to any good faith immunity
       under N.J.S.A. 59:3-3.                                                      16

V.    CONCLUSION                                                                   19

## **TABLE OF AUTHORITIES**

**CASES**

Anderson v. Creighton,
    483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987)  17

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242, 248 (1986)  9

Barna v. City of Perth Amboy,
    42 F.3d 809, 819 (3d Cir. 1994)  10

Beck v. State of Ohio,
    379 U.S. 89, 98, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)  12

Berner Int'l Corp. v. Mars Sales Co.,
    987 F.2d 975, 978 (3d Cir. 1993)  9

BeVier v. Hucal,
    806 F.2d 123, 128 (7th Cir.1986)  18

Burke v. Town of Walpole,
    405 F.3d 66 (C.A.1 2005)  14

Carroll v. United States,
    267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925)  12

Celotex Corp. v. Catrett,
    477 U.S. 317, 322 (1986).  10

Freeman v. County of Bexar,
    210 F.3d 550 (C.A.5 2000)  14

Gardenhire v. Schubert,
    205 F.3d 303 (C.A.6 2000)  13

Gerstein v. Pugh,
    420 U.S. 103, 111, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975)  12

Harlow v. Fitzgerald,
    457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  16

Hunter v. Bryant,
    502 U.S. 224, ----, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991)  17

Jordan v. Fox, Rothschild, O'Brien & Frankel,
    20 F.3d 1250, 1264 (3d Cir.1994)    10

Kneipp v. Tedder,
    95 F.3d 1199, 1204 (3d Cir. 1996)    10

Kuehl v. Burtis,
    173 F.3d 646 (C.A.8 1999)    15

Maples v. City of Atlantic City,
    2008 WL 2446825 (D.N.J.,2008)    11

Merkle v. Upper Dublin Sch. Dist.,
    211 F.3d 782 (C.A.3 2000)    14

Orsatti v. New Jersey State Police,
    71 F.3d 480, 482 (3d Cir. 1995)    10

Patzig v. O'Neil,
    577 F.2d 841, 848 (3d Cir.1978)    11

Sevigny v. Dicksey,
    846 F.2d 953, 957 (4th Cir.1988)    17

Shaw by Strain v. Strackhouse,
    920 F.2d 1135, 1142 (3d Cir.1990).  42 U.C.S. § 1983    10

Taylor v. Farmer,
    13 F.3d 117, 121 (4th Cir 1993)    18

United States v. Cruz,
    910 F.2d 1072, 1076 (3d Cir.1990)    10

United States v. Massac,
    867 F.2d 174, 175 (3d Cir.1989)    10

Wallis by and through Wallis v. Spencer,
    193 F.3d 1054 (C.A.9 1999)    14

**RULES & STATUTES**

Federal Rule of Civil Procedure 56(c)    9

42 U.S.C. §1983    10

N.J.S.A. 59:3-3 ......................................................................................................... 16

I.  INTRODUCTION

Plaintiff, Luis Angel Burgos-Cintron, by and through his undersigned counsel, hereby files this brief in support of his opposition to the Defendants' Motion for Summary Judgment. As an initial matter, Plaintiff withdraws his Monell claim as set forth in Count VI, of his complaint, Plaintiff agrees to withdraw all claims against the Defendants, Nyekan, Bumbera, and Fallon in their official capacities. Plaintiff agrees to withdraw his claims against Defendants South and Cunard with prejudice. Finally, Plaintiff also withdraws the Due Process claim made in Count III of his complaint. Plaintiff opposes the dismissal of his 4th and 14th Amendment claims and state law claims arising out of his malicious arrest.

II.  STATEMENT OF FACTS

Plaintiff is Luis Angel Burgos-Cintron and in 2000, Plaintiff was arrested and convicted for possession of a controlled substance with the intent to distribute. At that time he provided an alias, Luis Santiago, to the Camden Police. Plaintiff was convicted of the 2000 charge and served thirty-three months in New Jersey State Prison and was released in March, 2003. Plaintiff never used the Luis Santiago alias at any time after January 2000. (Exh. C.; p. 14.) He successfully completed his probation without any incident and has not had any negative police contact (other than the instant matter) since his 2000 conviction.

On October 4, 2007, Plaintiff received a phone call from his sister stating that she and Plaintiff's mother, Rosa Cintron, had separately been contacted that day by unknown members of the New Jersey State Police Defendants, who advised they were looking to speak with Plaintiff in relation to an attempted murder. In response, Plaintiff went to his mother's house, returned Defendants' call, and spoke to Defendant Fallon, wherein he advised that he had not had any role in an attempted murder. In response, Defendant, Fallon advised Plaintiff to stay at

5

his mother's house and that Defendants would take Plaintiff the prosecutor's office to clear up any confusion. Defendant Fallon never had any conversations with Plaintiff concerning the crime for which he was being charged and arrested, and his statements were simply an effort to convince Plaintiff to stay at his mother's house so he could be arrested without incident.

On or about September 15, 2007, Defendant New Jersey State Police Department began to investigate the attempted shooting of Kareem Parker ("Parker"). On this date, Parker got into a physical altercation with Thompson. At some point during the altercation, an individual indentified as Luis Santiago ("Santiago") brandished a .380 pistol and began firing at Parker. Plaintiff does not own a gun. The initial description of Santiago provided by Parker and Brown was that of a Hispanic male, 5 feet tall, with braids in his hair. In contrast, Plaintiff is approximately 6 feet tall, weighs approximately 270 pounds, and at all times material had short, cropped hair.

Shortly after the initial report, the investigation of the above 2007 incident was transferred from Camden Police Department to the New Jersey State Police and SIU, where Defendants Bumbera and Nyekan took over the investigation. In his statement to Defendants, Bumbera and Nyekan, Parker stated that he went to high school with Thompson and Santiago. Plaintiff never attended school with Parker. Defendants, Bumbera and Nyekan interviewed Parker but did not coordinate a lineup nor even a photograph identification of Thompson or Santiago as both Defendants viewed this procedure as unnecessary. Bumbera and Nyekan identified a witness to the above incident, George Brown, Sr. ("Brown"), from a surveillance video and Brown's presence during Bumbera and Nyekan's interview of Parker.

Brown provided a sworn statement in which he said that he went to high school with Santiago and Thompson, and has known them since that time. Plaintiff attended Camden High

6

School, beginning in or around 1996 and leaving approximately two (2) years later, prior to Parker, Brown, Santiago, and Thompson's attendance. Plaintiff does not know Parker, Brown, Santiago, and Thompson. Brown further told Defendants, Bumbera and Nyekan that he and Santiago had been involved in a verbal dispute on September 13, 2007, in New Jersey at the same store where the shooting occurred.

 Brown told Bumbera and Nyekan that on the date of the incident, September 15, 2007, he and Santiago had argued in front of the Mini Market where the shooting took place and that Santiago's niece was present during the initial verbal altercation. Santiago turned down Biederman Avenue in Camden to take his niece home, and when he returned, he had changed his white t-shirt to a black t-shirt. When he returned, Brown observed Santiago brandish a .380 pistol, and attempt to shoot Parker. Brown informed Bumbera and Nyekan that he had experienced numerous problems in the past with both Santiago and Thompson. Both Brown and Parker insisted that they knew the identity of the shooter, and in response, Defendants, Bumbera and Nyekan pulled a picture of Plaintiff, Luis A. Burgos-Cintorn (not Luis Santiago) from the Picture Link database at the offices of Defendant Police Department and presented that photograph to Parker and Brown. Upon reviewing only one photograph of plaintiff, Parker and Brown agreed that it depicted Luis Santiago, the shooter. At no time was Burgos-Cintron in the area of the shooting, and had nothing to do with the shooting. In fact, Plaintiff was working in Philadelphia during the altercation, so it was impossible that he was in New Jersey to be involved in the altercation.

 Importantly, Defendants, Bumbera and Nyekan knew there was more than one Luis Santiago in the Picture Link database. Bumbera acknowledged that "you may find this hard to believe, but people don't give their real name every time they're arrested." Despite this

7

knowledge, Bumbera and Nyekan presented Parker and Brown with one photograph of Luis Burgos-Cintron and further, and failed to perform any other investigative work on the case. Bumbera and Nyekan never attempted to find the .380 pistol, never interviewed Plaintiff, never searched for a 2005-06 blue Chrysler 300 with tinted windows (the vehicle both assailants used to flee the scene) and disregarded the contradictory physical description in their possession. Further, Defendant, Bumbera freely admits that a name and photograph identification is only one component of obtaining a successful clearance of a shooting case. Bumbera and Nyekan showed Brown one photograph of Plaintiff, taken at or around the time of Plaintiff's release from jail in or around 2003, regarding the 2001 arrest for drug offenses. (Exh. L). The photograph did not substantially portray how Plaintiff looked at that time as the photograph showed Plaintiff's hair in braids. When Plaintiff was arrested in 2001, his hair was cropped short, as it was again in 2007.

      Defendant, Nyekan was involved in the prosecution of Plaintiff, including gathering evidence, and preparing witness statements and was present on July 8, 2008 preparing Parker to testify against Plaintiff. At that meeting, Parker, upon looking at Plaintiff's photograph again, explained to Nyekan that Plaintiff had nothing to do with shooting at him, and that Defendants had arrested the wrong man. Critically, Defendants acknowledge that they were mistaken in arresting the Plaintiff, as he had nothing to do with the shooting, and subsequently sought to arrest Luis Santiago.

      Plaintiff was arrested based upon the investigation compiled by Defendants, Plaintiff's occupation is identified as "drug dealer." After his arrest, Plaintiff's bail was set at $250,000.00, which Plaintiff could not afford. As a result of the bail, Plaintiff was incarcerated in the Camden County Prison. In or around April 2008, Plaintiff's bail was reduced to $100,000.00, which sum

8

Plaintiff still could not afford.  Plaintiff was charged by State, with six (6) offenses, including attempted murder, multiple counts of aggravated assault, and multiple counts of possession of a weapon for unlawful purpose which included an affidavit by Nyekan.

Plaintiff was wrongfully imprisoned from October 4, 2007 until July 10, 2008.

At the time of the arrest, Defendants Nyekan and Bumbera possessed exculpatory evidence which was disregarded, including but not limited to, the fact that the alleged shooter, Santiago attended school with Parker and Brown, that Plaintiff was named Luis A. Burgos-Cintron, that Plaitniff lived in Philadelphia at the time of the shooting, not Camden, that Plaintiff was working at the time of the incident, and that the physical description of the alleged shooter, varied wildly from a description of the Plaintiff.  Plaintiff supplied alibi information, birth records, school transcripts, and witness statements, all of which was ignored by Defendants, City of Camden, State of New Jersey, and Camden City Police Department.

### III.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides for summary judgment when "there is no genuine issue as to any material fact and…the moving party is entitled to a judgment as a matter of law."  An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In Anderson, the Court explained that the Judge's role when adjudicating a Motion for Summary Judgment "is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.  In making this determination, a Court is to draw all reasonable inferences in favor of the non-moving party.  See Berner Int'l Corp. v. Mars Sales Co., 987 F.2d 975, 978 (3d Cir. 1993).  In other words, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion,

9

against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## IV.   LEGAL ARGUMENT

**A.  Defendants, Troopers Augustus Nyekan, Jr., James South, Mark Cunard, Richard Bumbera, New Jersey Division of State Police, and New Jersey Division of State Police Strategic Investigations Unit Are All Subject to Liability Under 42 U.S.C. §1983, Arising Out of the Misidentification and Subsequent Malicious Arrest of the Plaintiff.**

To prevail in a Section 1983 action, a plaintiff must establish (1) that the conduct constituted state action or action committed while acting under color of law and (2) that the conduct deprived an individual of rights, privileges, or immunities secured by the constitution or laws of the United States.  Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1264 (3d Cir.1994); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1142 (3d Cir.1990).  42 U.C.S. § 1983 does not create substantive rights. Rather, it provides an avenue of recovery for the deprivation of established constitutional or statutory rights. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).

The Fourth Amendment prohibits a police officer from arresting a citizen except upon probable cause.  Orsatti v. New Jersey State Police, 71 F.3d 480, 482 (3d Cir. 1995).  Probable cause to arrest exists "when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.  Id. at 483; United States v. Cruz, 910 F.2d 1072, 1076 (3d Cir.1990) (citation omitted), cert. denied, 498 U.S. 1039, 111 S.Ct. 709, 112 L.Ed.2d 698 (1991); United States v. Massac, 867 F.2d 174, 175 (3d Cir.1989).

A police officer who arrests an individual without probable cause may be liable for damages in a civil rights suit. Id.; Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir.

10

1994).  However, police officers, like other governmental officials, are protected from liability for civil damages where their conduct in performing a discretionary function does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Orsatti, 71 F.3d at 483.

For Fourth Amendment purposes, the issue is not whether the information on which police officers base their arrest resulted from a professionally executed investigation; rather, the issue is whether that information would warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.  Orsatti, 71 F.3d at 484.  The focus is upon the information the Detectives had available to them at the time, not on whether the information resulted from exemplary police work.  Orsatti, 71 F.3d at 484; see also Barna, 42 F.3d at 819.

Here, Defendants Nyekan, Bumbera, Fallon, Cunard and South unlawfully arrested Plaintiff in violation of his 4th Amendment right guaranteeing Plaintiff the right to be free from unreasonable seizures.  Maples v. City of Atlantic City, 2008 WL 2446825 (D.N.J.,2008). Plaintiff has voluntarily withdrawn his claims against the officers in their official capacities, and proceeds only against the Defendant Officers in their individual capacities.[1]

Plaintiff alleges that the individual Defendants committed a constitutional violation by unlawfully arresting him.  An arrest is unlawful and, thus, actionable if it is effectuated without probable cause.  Patzig v. O'Neil, 577 F.2d 841, 848 (3d Cir.1978).  Probable cause exists when the facts are such that a reasonably prudent person would believe that a crime had been

---

[1] It is established in the record that while Defendants, Nyekan and Bumbera did not actually physically arrest the Plaintiff, they were in charge of the investigation, including gathering facts and information concerning the alleged shooting and it was Defendant Fallon and others who physically arrested Plaintiff.  Consistent with Maples v. City of Atlantic City, 2008 WL 2446825 (D.N.J.,2008), Defendants Nyekan and Bumbera should be deemed to have actually "arrested" Plaintiff, based upon their involvement in the investigation.  It is also undisputed that Defendants Nyekan and Bumbera were the Troopers who actually charged Plaintiff, resulting in Plaintiff's arrest.

11

committed. Gerstein v. Pugh, 420 U.S. 103, 111, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). Thus, the question this Court must determine is whether the facts available to Nyekan, Bumbera and Fallon, at the time of arrest would warrant a reasonably prudent person to believe that Burgos-Cintron had committed these violations. Beck v. State of Ohio, 379 U.S. 89, 98, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964) ("[w]hen the constitutional validity of an arrest is challenged, it is the function of a court to determine whether the facts available to the officers at the moment of the arrest would 'warrant a man of reasonable caution in the belief' that an offense has been committed") (quoting Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925)).

Here, the facts known to Defendants, Nyekan and Bumbera at the time of the arrest were as follows: an altercation occurred on September 15, 2007, in Camden, New Jersey, involving Kareem Parker, George Brown, Luis Santiago and Joeseph Thompson. Both Parker and Brown identified the shooter as Luis Santiago, a 5 foot tall, Hispanic male, with braids, who they went to school with and had been involved in several altercations prior to the 2007 incident at issue here. Parker and Brown informed Nyekan and Bumbera that Santiago brandished and fired a .380 pistol at Parker, and then had fled the scene of the shooting in a 2005 or 2006 blue, Chrysler 300 with tinted windows. Based upon this information, Nyekan and Bumbera used the Picture Link database to find a photograph of Santiago (and Thompson) to be used to "confirm the identification" of the suspect, and prepare a warrant.

Defendants, Nyekan and Bumbera also knew at the time of the arrest of Plaintiff that there were many individuals in Camden, New Jersey, named Luis or Louie Santiago. Further, there were multiple individuals identified in Picture Link named Luis Santiago. Nyekan and Bumbera pulled one photograph of the Plaintiff, Luis Burgos-Cintron and presented that

photograph to Parker, who upon looking at the only photo presented to him of a Hispanic male, agreed that the photograph depicted the individual who attempted to shoot him. By failing to present Parker with a photo array of other individuals named Luis Santiago contained within the Picture Link database, or cross referencing the other information given by the witnesses, i.e., the physical description of the shooter, and the fact that Santiago attended school with Parker and Brown, Defendants Nyekan and Bumbera willfully disregarded facts known to them at the time of the arrest. The two officers knew that the Plaintiff was to be arrested for attempted murder, an extreme crime carrying a very serious penalty. No reason has ever been provided by the Defendants as to why other Picture Link photographs of individuals identified as Luis Santiago were not shown to the witnesses. Instead, Defendants Nyekan and Bumbera presented the witness with a photograph of an individual named Luis Burgos-Cintron, not Luis Santiago.

Further, Defendants Bumbera and Nyekan never interviewed other eyewitnesses to the attempted shooting, they did interview the storeowners to view a security tape, never attempted to actually speak with Luis Burgos-Cintron, never attempted to find Santiago's .380 pistol, and most critically, never attempted to reconcile the fact that Parker and Brown had given a physical description of Santiago, the shooter, as being a Hispanic male, approximately 5 feet tall and weighing 200 lbs. Plaintiff, Burgos-Cintron is well over 6 feet tall and 270lbs.

**B. In opposition to Defendants' Motion for Summary Judgment, there exists material issues of fact, as well as reasonable inferences which may be drawn from those facts, relating to whether Defendants, Troopers perpetrated a malicious prosecution, false arrest and false imprisonment of Plaintiff.**

The determination of whether an officer had probable cause to arrest a citizen involves a mixed question of fact (the historical events that occurred) and law (whether the facts, viewed from the standpoint of an objectively reasonable officer, amounts to probable cause). Gardenhire

v. Schubert, 205 F.3d 303 (C.A.6 2000).  In general, the existence of probable cause in a § 1983 action is a jury question.  Id.; Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782 (C.A.3 2000).

The common law presumption raised by a magistrate's prior finding that probable cause exists does not apply to § 1983 actions.  Merkle, supra.  Conflicting statements, by themselves, create a genuine dispute of material fact and of credibility that can only be resolved by the jury.  Wallis by and through Wallis v. Spencer, 193 F.3d 1054 (C.A.9 1999).

On summary judgment on claim that a police officer knowingly or recklessly gave false information to obtain an arrest warrant, Court must disregard all properly contested statements in the affidavit, include relevant exculpatory evidence left out of the affidavit, and then determine whether the warrant would establish probable cause without the allegedly false information.  Freeman v. County of Bexar, 210 F.3d 550 (C.A.5 2000).  Plaintiff must then demonstrate an issue of material fact as to whether a reasonably competent officer, possessing all the information defendants had when the affidavit was sworn to, could have concluded that a warrant should issue.  Id.  Court must look at the totality of the circumstances as they appear to defendants at the time to determine whether probable cause exists.  Id.

A Fourth Amendment violation may be established if a plaintiff can show that officers intentionally or recklessly omitted material, exculpatory facts from information presented to a magistrate.  Burke v. Town of Walpole, 405 F.3d 66 (C.A.1 2005).  Recklessness may be inferred where the omitted information was critical to the probable cause determination.  The law has clearly established that a police officer has a constitutional duty to disclose exculpatory evidence in seeking warrants based on probable cause, and an officer who failed to do so was not entitled to qualified immunity.  Id.

An officer is not free to disregard plainly exculpatory evidence, even if substantial inculpatory evidence (standing alone) suggests that probable cause exists. Court must analyze the weight of the all evidence in determining whether probable cause to arrest was present. Kuehl v. Burtis, 173 F.3d 646 (C.A.8 1999). Officer was not entitled to qualified immunity where he ignored plainly exculpatory evidence where there was no evidence of exigent circumstances. Id.

Whether Defendants, Nyekan and Bumbera recklessly disregarded the facts within their knowledge when they presented the eyewitnesses with one photograph of Luis Burgos Cintron, instead of multiple photographs of Luis Santiago, is a jury question. The basis for probable cause for the arrest and nearly ten (10) month incarceration of the Plaintiff for a crime that all parties agree he had nothing to do with, was the identification of the Plaintiff in the photograph presented to Parker by Defendants Nyekan and Bumbera. No other evidence was utilized by Defendants and no other investigation was preformed. The exculpatory evidence that was disregarded by Defendants Bumbera and Nyekan was the physical description of the shooter, which varied wildly from the physical appearance of the Plaintiff at the time of his arrest, and further that Luis Santiago attended school with both of the eyewitnesses. Both of these facts were recklessly disregarded when Defendants Bumbera and Nyekan were attempting to determine the identity of the shooter.

There is also evidence that Defendants were motivated by malice, a racial or some other bad intention when they arrested Plaintiff. On the arrest report, Plaintiff's occupation is identified by Defendants as "drug dealer." It can be reasonably inferred that the identification of Plaintiff's occupation as "drug dealer" was meant to be a joke. It is not funny… neither is remaining incarcerated for ten (10) months due to a misidentification. Plaintiff was convicted in

2000, more than ten years ago, of a drug crime, he served his sentence, was rehabilitated, and has not had any negative police contacts since the time of his release from prison (other than the instant matter). For the Defendants to identify Plaintiff's career as "drug dealer," evinces an extreme lack of attention to detail, malice towards the Plaintiff, and a callous disregard for who the Plaintiff actually is, i.e. Plaintiff's identity. Had Defendant Fallon (who apparently input this information), actually inquired as to Plaintiff's occupation, as is required on the arrest form, he would have discovered that at the time of the shooting, Plaintiff was working at one of his two full time jobs in Philadelphia, and could not have possibly committed the crime for which he was arrested and incarcerated for ten (10) months. The false identification of Plaintiff's occupation follows a pattern of misidentification and is an egregious example of the disregard for Plaintiff's constitutional right to be free from unreasonable seizure.

**C. In opposition to Defendants' Motion for Summary Judgment. Defendants, Troopers are not entitled to qualified immunity as to any of the Plaintiff's Federal or State claims in this matter. Further, Defendants, Troopers are not entitled to any good faith immunity under N.J.S.A. 59:3-3.**

**1. Defendants are not entitled to any qualified immunity.**

In recognition of the complex task performed by law enforcement officials, the Supreme Court has held that officers are entitled to a qualified immunity from civil liability under 42 U.S.C. § 1983. See Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In Harlow, the Court stated that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818, 102 S.Ct. at 2738. Immunity from civil liability obtains so long as official "actions could reasonably have been thought consistent with the rights they are alleged to have

violated." Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). The Supreme Court's decisions place a special emphasis on the reasonableness of an officer's actions, requiring courts to make an objective inquiry into the facts facing the officer at the time of the alleged improper act. See Harlow, 457 U.S. at 815-19, 102 S.Ct. at 2736-39. The objective nature of the inquiry is designed both to limit exhaustive inquiries into an individual officer's subjective state of mind, id. at 816-17, 107 S.Ct. at 3034-38, and to safeguard the general interests of law enforcement from the intrusions of extended litigation, see Hunter v. Bryant, 502 U.S. 224, ----, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991).

Because of these concerns, courts reviewing questions of qualified immunity should attempt to put themselves in the place of the officers at the scene and view events as "a police officer acting reasonably under the circumstances should have perceived [them]." Sevigny v. Dicksey, 846 F.2d 953, 957 (4th Cir.1988). The crucial question is not what hindsight may uncover, but what information the officers had in hand or could reasonably be expected to possess. Because police officers are regularly forced to make critical decisions under extreme time pressure-decisions which may seem much easier after facts have unfolded and time for reflection has been afforded-reasonable judgments which turn out to be mistaken are nonetheless entitled to protection.

The parameters for the qualified immunity inquiry, established by the Supreme Court, are of great benefit to the inquiry here concerning qualified immunity. This case did not involve any time pressure decisions needed to be made by the Defendants at issue. This case involved more than twenty days of investigation, multiple interviews with witnesses, and critically, a telephone call to the Plaintiff, who voluntarily came over to his mother's house in Camden from

Philadelphia so the police could speak with him about the shooting, and he could attempt to clear any confusion.

An important distinction involves the lack of exigent circumstances in this action. The latitude accorded police conduct is inescapably influenced by the need for prompt action in the interest of personal or public safety.  Taylor v. Farmer, 13 F.3d 117, 121 (4th Cir 1993).

This is not a case involving exigent circumstances when police officers hear a blood chilling scream from inside a house and are forced to take action based on their perception that something illegal and possibly dangerous or harmful is happening.  This case does not involve a suspect who is a flight risk.  This case involves the personal investigations which corroborated eyewitness reports, in which the police officers observation and information in their possession was contradictory, for example, the physical description of the shooter, in no way matched the physical description of the Plaintiff.  "A police officer may not close her or his eyes to facts that would help clarify the circumstances."  BeVier v. Hucal, 806 F.2d 123, 128 (7th Cir.1986).  A jury could find that Detectives Nyekan and Bumbera did just that.

A thorough review of the record demonstrated that Defendants Nyekan and Bumbera were not acting in an objectively reasonable manner with regard to Plaintiff's Fourth Amendment rights to be free from unreasonable seizures.

**2.  Defendants are not entitled to any Good Faith Immunity under N.J.S.A. 59:3-3.**

The New Jersey Good Faith Immunity Statute states:

> A public employee is not liable if he acts in good faith in the execution or enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment.

N.J.S.A. 59:3-3. As set forth in Defendants' Brief, the analysis for qualified immunity set forth above, and immunity under the New Jersey statute are essentially identical.

Defendants exhibited a reckless disregard for the constitutional rights of the Plaintiff and arrested him without probable cause, while disregarded or omitting exculpatory facts from the affidavit of probable cause, and as such, Defendants are not entitled to any good faith immunity.

As set forth above, Defendants clearly violated Plaintiff's 4th Amendment right to be free from unreasonable seizure and there are sufficient facts in the record that a reasonable jury could find Defendants Nyekan, Bumbera and fallon violated Plaintiff's constitutional rights subject to 42 U.S.C. § 1983.

## V.   CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests the Court deny the Motion for Summary Judgment filed by Defendants in this matter and permit this case to proceed to trial.

WEISBERG LAW, P.C.

/s/ Matthew B. Weisberg
Matthew B. Weisberg, Esquire
Graham F. Baird, Esquire
Attorneys for Plaintiff